Chad Eric MILLER, Petitioner–
Appellant,

v.

Jack A. DUCKWORTH, and the
Attorney General of the State of
Indiana, Respondents–Appellees.

No. 91–1681.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1991.

Decided May 13, 1992.

David Vandercoy (argued), Valparaiso,
Ind., for petitioner-appellant.

Michael Schaefer (argued) and Kimberlie
A. Forgey, Deputy Attys. Gen., Office of
the Atty. Gen., Federal Litigation, India-
napolis, Ind., for respondents-appellees.

Before EASTERBROOK, RIPPLE and
KANNE, Circuit Judges.

KANNE, Circuit Judge.

Chad Eric Miller, an Indiana state prison-
er, filed a petition for habeas corpus pursu-
ant to 28 U.S.C. § 2254. In his claim for
relief, Miller alleged that he was deprived
of his due process rights during a prison
disciplinary hearing convened to determine
if he was guilty of escaping a youth correc-
tional center. The district court denied his
petition. For the following reasons, we
affirm.

I.

From August 1983 to December 1986,
Chad Miller was an inmate at the Indiana
Youth Center (IYC) at Plainfield in Hen-
dricks County, Indiana, where he was serv-
ing concurrent sentences for two robbery
convictions. On Christmas Day, 1986, Mil-
ler managed to escape from the IYC, but
he was captured the next day in nearby
Marion County, Indiana. Miller was imme-
diately taken to the Marion County Jail.

On December 31, 1986, Miller was visited
at the jail by Ingrid Sleet, a screening
officer for the prison's Conduct Adjust-
ment Board. Sleet informed him that a
disciplinary hearing would be held on the
institutional charge of escape pending
against him, and she also advised him of
his rights with reference to the hearing.
Having been so apprised, Miller entered a
plea of not guilty to the charge and re-

quested the assistance of a lay advocate for the purpose of presenting his defense. Both statements were noted on the prison's Notice of Disciplinary Hearing form; however, it is unclear as to whether Miller had in fact indicated that he wished to call any witnesses in his defense, for Sleet made no such notification on the form. Sleet then notified Miller that his disciplinary hearing would be convened a week later on either January 6 or 7, 1987.

On January 2, 1987, Miller was transferred to the Hendricks County Jail to await his prison disciplinary hearing and his court trial on the related criminal charges. While incarcerated at the Hendricks County jail, Miller was precluded from communicating with any inmate witnesses located at the IYC, pursuant to Indiana Code § 11–11–3–2:

> (b) The department [of Corrections] may require prior approval of correspondence between a confined person and another person if the other person:
>
> (1) is being held in a correction facility.

Ind.Code § 11–11–3–2 (West Supp.1990). Obviously, prison officials viewed Miller's requested communications as a security threat since he was in a position to inform other IYC inmates as to his method of escape.

Miller's disciplinary hearing before the Board was held at the Hendricks County Jail on January 7, 1987. No lay advocate appeared on his behalf. During the hearing, Miller made a brief statement explaining that his motive for escaping the IYC was based on family problems. He then asked that he be permitted to call three witnesses for his defense, but this request was denied. After considering Miller's statement, his conduct report and several other affidavits submitted by prison personnel, the Board found him guilty of escape and sanctioned him with 1096 days of disciplinary segregation, a transfer to the Indiana State Prison, a demotion of his credit earning class, and a loss of 628 days of good time credit.

Miller did not pursue any of the state-authorized methods for appealing Board decisions,[1] claiming that he was never provided with the forms necessary for seeking such relief, and that, in any event, such appeals would not be entertained in the Indiana state courts. Instead, he filed a petition for habeas corpus relief in federal court on October 26, 1988. The district court subsequently appointed counsel to represent Miller, and shortly thereafter, Miller was granted leave to file an amended petition for relief. In his amended petition, Miller argued, among other things, that (1) he was unconstitutionally deprived of the assistance of a lay advocate; (2) he was not given adequate notice of the disciplinary hearing; and (3) he was unconstitutionally precluded from calling witnesses on his own behalf and cross-examining witnesses against him. Briefs on these issues were submitted by both parties.

The district court denied Miller's petition for habeas corpus. Relying on the Supreme Court's decision in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the court found that Miller was not entitled to the assistance of a lay advocate because he was not illiterate, nor were issues he presented complex. The court also concluded that the prison officials acted within their discretion when they refused to call the three witnesses proffered by Miller. However, the court rejected the state's assertion that Miller had failed to exhaust his administrative remedies prior to petitioning for habeas corpus relief. Nor did the court accept the state's contention that Miller had waived his right to call witnesses when he failed to identify them during his meeting with officer Sleet. The district court entered judgment against Miller on March 5, 1991. This appeal followed.

## II.

■ Miller raises two challenges to the denial of his petition for habeas corpus. First, he claims that he was entitled to the

---

1. If an inmate is not satisfied with the Board's finding, he may appeal its determination to the institution head within ten days of the hearing. If that decision is also unfavorable, the inmate may then take the cause to a final review authority.

assistance of a lay advocate under the authority of *Wolff v. McDonnell,* and that by denying him such assistance, the state of Indiana deprived him of the due process right to prepare an adequate defense to institutional charges. Second, he asserts that he was unconstitutionally precluded from calling witnesses to testify in his behalf during his disciplinary hearing, again in violation of his right to due process of law. We find both arguments unpersuasive.

In *Wolff,* the Supreme Court held that due process entitled prisoners to certain procedural safeguards before they may be deprived of their statutorily created right to good time credits. Specifically, the Court concluded that prisoners must be provided with advance written notice of the alleged violation of the disciplinary rules, a written statement indicating what evidence the fact-finders relied upon and their reasons for the disciplinary action taken, *id.* at 563, 94 S.Ct. at 2978, and, if institutional safety requires the omission of certain evidence, a statement indicating the fact of such omission. *Id.* at 565, 94 S.Ct. at 2979. The Court also stated that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. at 2979. In recognizing this right, however, the Court noted that prison officials possess the discretion to determine what institutional concerns require for each set of circumstances. Finally, the Court concluded that due process did not require that the prisoner be appointed a lay advocate, unless "an illiterate inmate is involved ... or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Id.* at 570, 94 S.Ct. at 2982.

To support his contention that he was entitled to the assistance of a lay advocate, Miller asserts that *Wolff* should be read to require the appointment of a lay advocate whenever a prisoner is unable to collect and present evidence for his defense, regardless of whether the prisoner was illiterate or the issues complex. We find no language in *Wolff* to support so broad a construction. *Wolff's* provision for lay assistance is plainly contingent on the inmate's illiteracy or the complexity of the case, and Miller does not cite—nor can we find—any authority suggesting otherwise. Simply put, there is no basis for expanding the limited role of lay advocate assistance for prison inmates beyond that recognized in *Wolff.*

Without the benefit of an unnecessarily expansive reading of *Wolff,* Miller's claim for lay advocate assistance must fail. Considering Miller's pro-se pleadings and other submissions to the district court, it seems readily apparent that he is far from illiterate. Nor are the issues presented in his case so complex as to warrant the appointment of a lay advocate; indeed, Miller himself admitted that he was guilty as charged of the institutional violation. We therefore hold that the district court properly concluded that Miller was not deprived of any federal constitutional rights by the Board's failure to appoint a lay advocate to assist him during the disciplinary hearing. In so holding, however, we do not mean to suggest that all escape cases are *per se* "simple" for purposes of *Wolff.* Certainly there will be instances where legal assistance may be necessary to fully develop a defense to other charges intertwined with an escape, or perhaps to determine whether an escape occurred at all. But, as is manifest from the record below, such is not the case here.

■ We likewise reject Miller's claim that he was unconstitutionally prevented from calling witnesses on his own behalf. Even assuming that he had in fact requested the presentation of such witnesses— whether during his interview with Officer Sleet or at any later date—their testimony would have added little if any value to the Board's determination.[2] Miller's sole pur-

---

**2.** The record reveals serious questions as to whether Miller ever informed officer Sleet that

he wished to call any witnesses at his prison disciplinary hearing; the Conduct Report served

pose in calling these witnesses was to establish that the alleged severity of his family problems was a sufficient justification for escaping IYC. But as the district court pointed out, "it is highly doubtful if the petitioner's proffered excuse evidence is either relevant or a defense to the charge of escape." *See United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (defense of duress or necessity unavailable where defendants claimed they escaped because of jail conditions and threats against them); *United States v. Caldwell,* 625 F.2d 144 (7th Cir.1980) (instruction on duress defense not required where defendant claimed he received death threats from other inmates). We see no reason to disturb that judgment.

By contrast, the potential for disruption by accommodating Miller's request cannot be overstated. Not surprisingly, the prison officials were reluctant to permit Miller to return to the IYC, where he would able to disclose his escape route to others. Their determination that such communication might pose a threat to security certainly falls within "the necessary discretion ... to keep the hearing within reasonable limits." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979. Hence, we conclude that denying Miller's request for witnesses did not violate his due process rights.

Miller's contention that the fourteenth amendment requires the State of Indiana to provide judicial review of prison disciplinary proceedings is without merit and warrants no further discussion.

### III.

We AFFIRM the district court's denial of Miller's petition for habeas corpus.

on Miller at the Marion County Jail on December 31, 1986 records *"none requested"* on the appropriate witness request box. Accordingly, the state has argued that this would amount to a "waiver" of Miller's right to request witnesses at a later date. We disagree. If that were the case, a prisoner would be required to come up with the names of all his or her potential defense witnesses immediately upon notification. While the prisoner certainly cannot wait until the day of the hearing to make such requests, due process would certainly dictate that he be given a reasonable time to plan his defense.