Willie James BILLOPS, Petitioner,

v.

Charles WRIGHT, and Indiana Attorney
General, Respondents.

Civ. No. S 92–321 (S).

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 7, 1992.

Willie James Billops, pro se.

Thomas D. Quigley, Deputy Atty. Gen.,
Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On May 22, 1992, *pro se* petitioner, Willie
James Billops, an inmate at the Westville
Correctional Center, filed a petition seeking
relief under 28 U.S.C. § 2254. The return
filed by the respondents on August 17,
1992, demonstrates the necessary compli-
ance with *Lewis v. Faulkner*, 689 F.2d 100
(7th Cir.1982). The necessary record with
reference to the prison disciplinary pro-
ceedings has also been filed. On Septem-
ber 14, 1992, the petitioner filed a 15–page
filing entitled "Return of Order Showing
Cause and Memorandum in Support of Re-
turn."

This petitioner was convicted in the Elk-
hart Superior Court of burglary and was
sentenced to an eight-year term on May 1,

1989, and is in custody at the Westville Correctional Center, Maximum Control Complex at times relevant to this case. This court is obligated to examine and consider the proceedings before the Conduct Adjustment Board in light of the decision in *Miller v. Duckworth*, 963 F.2d 1002 (7th Cir.1992) and the very recent decision in *Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir.1992).

The court must examine the records under the mandates of *Supt., Mass. Corr. Institution at Walpole v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The principal thrust of the petitioner's claim is that he was denied his right to call witnesses in three different CAB proceedings. Those proceedings resulted in findings of guilt for disorderly conduct, unauthorized possession of state property, and violation of state or federal law. This court has examined the records in regard to these proceedings that have been provided to the court and these records appear to pass constitutional muster under *Supt., supra,* and *Wolff, supra.*

▇ In the case WCC–91–3–2560 involving disorderly conduct, the documents used in the CAB procedure indicate that on March 8, 1991 petitioner was charged with disorderly conduct after he yelled certain expletives at an officer in the kitchen of the General Services Complex ("GSC"). The reporting officer listed fellow Officers Murray and Todd as witnesses to the event in the text of the Conduct Report. The petitioner received a copy of the aforementioned report as well as a copy of the Notice of Disciplinary Hearing on March 11, 1991. The petitioner requested only Sgt. Fort as a witness and a lay advocate at the hearing to be held on March 14, 1991.

Prior to the March 14th hearing, notices were sent to Sgt. Fort and inmate Genie Morris. During the hearing, the petitioner explained that he and the reporting officer had "had words, but I didn't cuss him." The report from the hearing also indicates that the CAB considered the conduct report, witness statements, and the petitioner's statement as factors in the finding of guilt. The CAB noted that Sgt. Ford "was not in [the] immediate area when [the] incident occurred," and a notation on the form indicates that Officers Murray and Todd were "not requested at screening." As a result of this incident and the hearing, the petitioner lost 90 days' earned credit time.

Subsequently, the petitioner pursued an administrative appeal premised on the contention that he had been denied proper preparation of his defense. The petitioner contends that he did not request Officers Todd and Murray at the March 11, 1991 screening because he had assumed that the two officers would corroborate the reporting officer. After the two officers advised him differently, the petitioner indicates that he advised the screening officer of his desire to add the two officers to the witness list. According to procedure, notices were proffered to the two officers, but there the process went awry. Apparently, Officer Todd could not respond to his notice because he had been injured recently and was not available on that particular day. Officer Murray did not respond because he never received the notice as it was misdirected to an Officer Murphy, who had no knowledge of the incident and returned the notice and indicated that he would not appear. The petitioner asserts that the two officers would have supported his contention that he was innocent, and therefore, a continuance should have been granted. Subsequently, the petitioner appealed and the administrative appeal was denied by the superintendent. In so doing, the superintendent indicated that there was not any evidence in the record to support petitioner's aforementioned contentions.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court, as outlined by Justice White, explained the requirements applicable to procedures of this nature:

> We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will

not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessity (sic) discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine a party, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.

*Wolff,* 418 U.S. at 566–567, 94 S.Ct. at 2979–80. The question is whether the above quoted provisions of *Wolff* and its progeny in this circuit have been violated in this case.

More recently, in *Miller v. Duckworth,* 963 F.2d 1002 (7th Cir.1992), the Seventh Circuit, speaking through Judge Kanne, explained further the parameters of *Wolff.* The court indicated that "[w]hile the prisoner certainly can not wait until the day of the hearing to make such requests, due process would certainly dictate that he be given a reasonable time to plan his defense." *Id.* at 1004–05 n. 2. The respondent maintains that the petitioner was given a reasonable time to plan his defense even if all factual disputes are resolved in favor of the petitioner. This court finds that assertion very questionable considering the fact that the notices were sent to the two officers in accordance with CAB procedures. The issue is not whether the petitioner used a reasonable amount of time to plan his defense, clearly he did or the CAB would not have allowed him to issue the notices at all. Here, the issue more accurately stems from ascertaining the reasons behind the CAB's refusal to call the witnesses or issue a continuance. To this argument, respondent points out that the CAB record does not recite any reason why the witnesses were not allowed and that this is acceptable in light of *Ponte v. Real,* 471 U.S. 491, 496–97, 105 S.Ct. 2192, 2195–96, 85 L.Ed.2d 553 (1985).

In *Ponte,* the Court explained that "chief among the due process minima outlined in *Wolff* was the right of an inmate to call and present witnesses ... in his defense before a disciplinary board." *Ponte,* 471 U.S. at 495, 105 S.Ct. at 2195. Insofar as a prisoner has this right to present witnesses, it "is necessarily circumscribed by the penological need to provide swift discipline." *Id.* at 495, 105 S.Ct. at 2195 (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 321, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976); *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2974). It is also proscribed by the necessity of avoiding situations that are "unduly hazardous to institutional safety or correctional goals." *Id.* The parameters "placed upon an inmate's right to call witnesses do not give prison officials the unfettered dis-

cretion to deny that right for no reason at all." *Jackson v. O'Leary,* No. 89 C 7383, 1992 WL 38403, 1992 U.S. Dist. LEXIS 2108 (N.D.Ill. Feb. 25, 1992). In *Ponte,* the Court explained that the CAB may be required to explain the denial at either the disciplinary hearing or in a subsequent court proceeding. The Court indicated:

> [T]o hold that the Due Process Clause confers a circumscribed right on the inmate to call witnesses at a disciplinary hearing, and then conclude that no explanation need ever be vouched for the denial of that right, either in the disciplinary proceeding itself or if that proceeding be later challenged in court, would change an admittedly circumscribed right into a privilege conferred in the unreviewable discretion of the disciplinary board. We think our holding in *Wolff* meant something more than that.

*Ponte,* 471 U.S. at 498, 105 S.Ct. at 2197.

Here, the court must consider whether the CAB violated the petitioner's right to due process by not granting his request to call the aforementioned witnesses or his alleged request for a continuance. In evaluating prison disciplinary proceedings, the courts have continuously referred to the *Ponte* holding recognizing "not only the inmate's right to request witnesses, but also, to make that right meaningful, the right to have the disciplinary committee give reasons for the denial." *Dunmars v. Lane,* 89 C 8491, 1990 WL 207374, 1990 U.S. Dist. LEXIS 15764 (N.D.Ill. Nov. 23, 1990). "The reasons for a denial of a request for witnesses need not, however, appear in the administrative record to comply with due process." *Ponte,* 471 U.S. at 496, 105 S.Ct. at 2195. "Prison officials may meet due process requirements by providing reasons at a later date should an inmate challenge a disciplinary committee's refusal to honor a witness request." *Ponte,* 471 U.S. at 497, 105 S.Ct. at 2196. In fact, in *Stringer v. Lane,* 89 C 7030, 1992 WL 59101, 1992 U.S. Dist. LEXIS 3112 (N.D.Ill. March 16, 1992), the court indicated that "[a]lthough we do not prescribe it, it would be useful for the [disciplinary board] to state its reasons for refusing to call a witness, whether it be for

irrelevance, lack of necessity, or the hazards presented in individual cases."

Ultimately, in the case WCC–91–3–2560 involving disorderly conduct, much of it comes down to the fact that the petitioner himself admitted the conduct of which the CAB found him guilty. Here, the petitioner conceded that he involved himself in a dispute between the reporting officer and another inmate. In doing so, petitioner further indicated that he "had words" with the officer, but he denied the use of harsh expletives. Additionally, although he disputed his location when the officer requested his identification badge, he did not deny his vehement and vocal refusal to present it to the officer. It is also noted that the petitioner's chagrin was also responsible for inciting the other offenders in the vicinity. Therefore, it does not appear necessary to recreate every detail of the incident to ascertain that the CAB action in this area was acceptable because petitioner could not illustrate how he was harmed by the exclusion of the two officers' statements. While this issue invokes the coextensive holdings of *Ponte* and *Miller,* the aforementioned factors militate against an extensive consideration of these holdings and places this court in the realm of harmless error.

It must by now be well known that this court is reluctant to rely on harmless error for a decision. There is a well-developed body of harmless error law in this circuit at this time. Constitutional errors in a criminal trial are grounds for reversal unless they are "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The petitioner is entitled to a fair trial not a perfect one. *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). *See also Sulie v. Duckworth,* 864 F.2d 1348, 1356 (7th Cir.1988), *cert. denied,* 493 U.S. 828, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989); *Ortega v. O'Leary,* 843 F.2d 258, 262 (7th Cir.), *cert. denied,* 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988). The harmless error rule "promotes public respect for the criminal process by focusing on the underlying fair-

ness of the trial rather than on the virtually inevitable presence of immaterial error." *Van Arsdall,* 475 U.S. at 681, 106 S.Ct. at 1436. *See also United States ex rel. Thomas v. O'Leary,* 856 F.2d 1011, 1017 (7th Cir.1988). The concept of harmless error has also been applied when reviewing under 28 U.S.C. § 2254 prison disciplinary proceedings. *See Hayes v. Thompson,* 637 F.2d 483, 493 (7th Cir.1980). Again, in light of the evidence considered by the CAB, this court finds that the petitioner's proposed witnesses and their accompanying testimony would not have altered the result at issue here, and is therefore harmless error.

■ Next, petitioner challenges the CAB disciplinary proceedings stemming from an incident where the petitioner was initially charged with destroying, altering, or damaging state property or property belonging to another. The reporting officer indicated that on October 8, 1991, he found the petitioner in possession of the cord to a fan and of parts of a plug and the entire cord to a buffer. The petitioner informed the officer that he was in fact repairing the fan.

At his screening on October 11, 1991, the petitioner requested that three witnesses be called at the CAB proceeding on October 15, 1991. The hearing report indicates that the CAB considered "witness statements, and offenders statement," and listed the petitioner's three witness on the witness list. According to the report, the petitioner explained to the CAB that he was fixing the fan and that the buffer was already broken. Subsequently, the CAB found petitioner "guilty of having hardware parts from a state buffer and fan and was attempting (admittedly) to repair the fan [without] authorization from staff."

The petitioner contends that the CAB refused to continue the case until witnesses' statements could be received. The report from the hearing states the CAB considered the statements of three witnesses, and the petitioner contends that the CAB did not. Again, the respondent points out

that the CAB record does not recite any reason why the witnesses were not allowed and that this is acceptable in light of *Ponte v. Real,* 471 U.S. 491, 496–97, 105 S.Ct. 2192, 2195–96, 85 L.Ed.2d 553 (1985).

In evaluating *Ponte,* the court in *Reno v. Peters,* 87 C 9659, 1991 WL 47370, 1991 U.S. Dist. LEXIS 3969 (N.D.Ill. March 29, 1991), indicated that the "[d]efendants here have elected to discharge their due process obligations both with written reasons recorded at the time of the hearing and with affidavits and other evidence to clarify the reasons noted in the record ..." *See also Jamison Bey v. Terrell,* 90 C 4424, 1991 WL 202654, 1991 U.S. Dist. LEXIS 13714 (N.D.Ill. Sept. 30, 1991) (The court held that "the mere conclusion that the proposed witnesses testimony would be cumulative is not enough to satisfy due process." The court also indicated that "under *Ponte,* the court may look at more than just the administrative record" in evaluating the denial of requested witnesses and "[d]efendants thus are free to refile their motion with further affidavits explaining the basis of their decision in greater detail."). However, as illustrated in *Miller,* it is also apparent that in some instances, the CAB does not have to spell out what is manifest from the record. This is particularly true when the witnesses' testimony is considered to be irrelevant or immaterial.

The petitioner maintains that the witnesses' testimony concerned the issue of whether he was fixing the fan and the condition of the buffer. The CAB found the petitioner "guilty of having hardware parts from a state buffer and fan" without authorization. It is unlikely that anything a witness had to say about this situation would have affected the outcome, and was therefore irrelevant or immaterial. Thus, the CAB acted well within its discretion in refusing to allow petitioner to call these witnesses. It also needs to be mentioned that the sanction in WCC–91–10–8981 for unauthorized possession of state property was concurrent with the sanction in WCC–91–3–8978.[1] Therefore, even if this court

---

1. In the concurrent case, 8978, petitioner was found to have fled from a staff member and was

given segregation, limited to time served, and demoted in credit class from class II to class III.

found in favor of the petitioner, there is no remedy available because of the concurrent sanctions entered on this matter.

■ Finally, in WCC–91–10–9589, which is by far the most serious charge, the petitioner was charged with stabbing a fellow offender on October 23, 1991. The stabbing followed a confrontation in which the victim had accused the petitioner of breaking into his locker and stealing his property. CAB procedures indicate that an offender can request witnesses at the time the charge is at the screening stage. The Notice of Disciplinary Hearing on this charge does not reflect that the petitioner requested any witnesses. It does reflect that the petitioner was recalcitrant and that he refused to sign the notice of the hearing or to plead to the charge.

The hearing report indicates that at the hearing the petitioner requested witnesses, but his request was denied because "none were requested at screening." The CAB found the petitioner guilty and the petitioner appealed and submitted statements from two witnesses of an exculpatory nature. The appeal was denied and the petitioner appealed further to the Deputy Commissioner of Operations. In this appeal, the petitioner did not allege that he was denied any witnesses.

Here, respondent points out that the petitioner eschewed the opportunity to request a witness when he met with the screening officer on November 1, 1991. Evidently, the incident had occurred nine days earlier, and the petitioner has been placed in handcuffs and placed in segregation. During the nine days of segregation, respondent suggests that the petitioner had ample opportunity to decide to call any of the many inmates who witnessed the stabbing, or a witness-inmate whose statement would serve as an alibi for the petitioner. Respondent maintains that this series of events is "squarely within the *Miller* dictum" because the petitioner was given a reasonable time to plan his defense and he did wait until the day of the hearing to make his request. Conversely, the petitioner claims that being in segregation effec-

Petitioner does not challenge the proceeding or

tively barred him from the calling of witnesses. Essentially, the petitioner asserts that segregation meant that the he had no means of communication with the general prison population and this was detrimental because the petitioner knew no inmates by name as he had only been in that particular dorm for eleven days.

In *Dunmars*, 89 C 8491, 1990 WL 207374, 1990 U.S. Dist. LEXIS 15764 (N.D.Ill. Nov. 23, 1990), the court indicated that "the petitioner failed to request a witness prior to the hearing in accordance with proper administrative procedures ... [n]or does he allege he asked for a continuance so that the [CAB] could contact his proposed witness." *Id.* In light of the fact that the petitioner waited until the hearing to request his witness, the *Dunmars* court indicated that the petitioner failed to follow the requisite procedures for calling witnesses. The court indicated that the petitioner "cannot now complain that the committee violated his rights when his own procedural default left the committee with no way to have his witness present." *Id.* (quoting *Carter v. Fairman*, 675 F.Supp. 449 (N.D.Ill.1987). The *Dunmars* court explained further:

> The delicate balance between maintaining prison security and preserving fundamental rights of prisoners would be tipped dangerously against prison safety if inmates were permitted to flout regulatory procedures. Having failed to comply with procedures designed to insure a fair hearing or to allege any reason to explain why he could not comply with those procedures, [petitioner] has waived his right to contest the defendants' refusal to contact witnesses on his behalf at his disciplinary hearing.

*Id.*

More recently, the exact language used by Judge Kanne in *Miller* is worthy of consideration here:

> We likewise reject [petitioner's] claim that he was unconstitutionally prevented from calling witnesses on his own behalf. Even assuming that he had in fact re-

its result.

quested the presentation of such witnesses—whether during his interview with Officer Sheet or at any later date—their testimony would have added little if any value to the Board's determination.

*Miller,* 963 F.2d at 1004. The footnote accompanying this part of the opinion clarifies the details involved in *Miller:*

> The record reveals serious questions as to whether Miller ever informed officer Sleet that he wished to call any witnesses at his prison disciplinary hearing; the Conduct Report served on [petitioner] at the Marion County Jail on December 31, 1986 records "none requested" on the appropriate witness request box. Accordingly, the state has argued that this would amount to a "waiver" of [petitioner's] right to request witnesses at a later date. We disagree. If that were the case, a prisoner would be required to come up with the names of all his or her potential defense witnesses immediately upon notification. While the prisoner certainly cannot wait until the day of the hearing to make such requests, due process would certainly dictate that he be given a reasonable time to plan his defense.

*Id.* at 1004 n. 2.

In light of the explanation in *Miller,* it is apparent that the petitioner should have at least attempted to invoke the necessary procedures even though he was in segregation. The petitioner was not facing the CAB for the first time, and he certainly was knowledgeable about the requisite procedures to be invoked. More recently, in *Hamilton v. O'Leary,* 976 F.2d 341, 346–347 (7th Cir.1992), the court indicated that when an inmate has been given the opportunity to call witnesses and fails to do so,

the CAB "could properly deny the request as untimely." *Id.* In *Hamilton,* the court also explained that the review of the CAB's decision is very narrow and the decision is based on "whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 346 (*quoting Supt., Mass. Corr. Institution at Walpole v. Hill,* 472 U.S. at 455–56, 105 S.Ct. at 2774) (emphasis supplied). Here, the CAB's decision was "supported by some evidence," *Id.* at 346, and is therefore not reviewable.[2]

Here, the petitioner also appealed to the superintendent through a four page memorandum and two witness statements.[3] In the two witness statements, it should be noted that the petitioner has proffered unverified versions of what the witnesses *might* say. There is no proffer of a verification of same by these putative witnesses. More importantly, it should be pointed out that the aforementioned memorandum and the witness statements were considered and denied on administrative appeal. Finally, the petitioner appealed to the Deputy Commissioner of Operations and the denial of that administrative appeal proceeded this action.

After a careful review of the record in this case, this court finds that the petitioner is not entitled to any relief under 28 U.S.C. § 2254. Such petition is now DENIED. IT IS SO ORDERED.

*Id.* at 346.

---

**2.** The *Hamilton* court also indicated: This 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.' [*Supt., supra,* 472 U.S. at 455, 105 S.Ct. at 2774]; *see also Viens v. Daniels,* 871 F.2d 1328, 1334–36 (7th Cir.1989). Although the evidence before the disciplinary board must 'point to the accused's guilt,' *Lenea v. Lane,* 882 F.2d 1171, 1175 (7th Cir.1989), only evidence that was presented to the [CAB] is relevant to this analysis.

**3.** The two witness statements were made by Ingalls, another inmate, and Officer Fountain respectively. Inmate Ingalls alleged that the petitioner had been with him during the time period in which the stabbing incident occurred. Officer Fountain stated that when he saw the petitioner after the stabbing, the petitioner had no blood on his clothing and appeared calm.