92 F.3d 1187
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Nathaniel JONES-BEY, Petitioner-Appellant,
v.
Herbert NEWKIRK** and Indiana Attorney
General, Respondents-Appellees.
 No. 95-1944.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 14, 1996.*
Decided July 30, 1996.
 
 Appeal from the United States District Court, for the Northern District of Indiana, South Bend Division, No. 94 CV 397; Allen Sharp, Chief Judge.
 N.D.Ind.
 VACATED.
 Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Nathaniel Jones-Bey is a prisoner incarcerated at the Maximum Control Complex ("MCC") in Westville, Indiana. In July, 1993, Jones-Bey was receiving from the prison infirmary Percogesic, an over-the-counter medication, for his back pain. When guards determined that Jones-Bey was hoarding Percogesic pills, the prison doctor switched him to liquid Tylenol. Percogesic and Tylenol are pharmacologically similar. Physician's Desk Reference for Nonprescription Drugs 754, 699 (16th ed. 1995).
 
 
 2
 Jones-Bey apparently continued to ask a prison nurse for Percogesic, and in early August, he wrote a letter to her. Although ambiguous, the letter can be read as an attempt to induce the nurse to provide him with Percogesic. Based on this letter and a confidential report from the nurse, the prison's Conduct Adjustment Board ("CAB") found Jones-Bey guilty of an offense called "trafficking." Ind. Dept. of Correction, Adult Disciplinary Policy Procedures 40 (1990) (hereafter "ADPP"). (Strictly speaking, proceedings before a prison disciplinary committee are not criminal trials, and hence a prisoner is neither convicted nor found guilty, but we use these terms for convenience.) Jones-Bey received 60 days of isolation, loss of 180 days of good time credit, and 30 days of limited recreational time. After exhausting his administrative appeals, Jones-Bey filed a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254. The district court denied Jones-Bey's petition, and this appeal followed.
 
 
 3
 Jones-Bey raises seven issues in his appeal; five of them are easily disposed of. First, he argues that he was denied a lay advocate (Issue II) and that the CAB adjudged him guilty on less than a preponderance of evidence (Issue V), both in violation of Indiana law. But federal courts in habeas corpus proceedings do not review whether state tribunals violated state law; federal courts review only whether state tribunals violated the federal constitution or federal law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Because there is no federal constitutional or statutory right to have a lay advocate in prison disciplinary proceedings, United States v. Gouveia, 467 U.S. 180, 185 n. 1 (1984); Wolff v. McDonnell, 418 U.S. 539, 570 (1974); Miller v. Duckworth, 963 F.2d 1002, 1004 (7th Cir.1992), nor is there any federal right for prison disciplinary hearings to judge prisoners on any standard higher than "some evidence," Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); Henderson v. United States Parole Comm'n, 13 F.3d 1073, 1077 (7th Cir.1994), these arguments do not state a claim for relief under § 2254.
 
 
 4
 In Issues VI and VII, Jones-Bey raises a number of challenges to the CAB's reliance on the nurse's confidential report. First, he claims that the report was never made a part of the record, and therefore the CAB's reliance on it amounted to the kind of "unreviewable discretion" we found unacceptable in Forbes v. Trigg, 976 F.2d 308, 318 (7th Cir.1992). This argument is simply incorrect: the nurse's report is in the record, albeit under seal, and both the district court and this court reviewed it. Thus, the CAB's reliance on the report does not implicate the concerns we expressed in Forbes. Jones-Bey also complains that he was never allowed to see the report, in contravention of his rights under the Sixth Amendment. But prisoners in disciplinary hearings do not have a right to confront the witnesses against them. Wolff, 418 U.S. at 560-63, 567-69; see also Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir.1992). Finally, Jones-Bey argues that the nurse is similar to a confidential informant, and there must therefore be some evidence in the record establishing her reliability. The nurse is not a confidential informant, however: she is a prison employee who submitted a confidential report. Her reliability is therefore not at issue. Moreover, the Respondents submitted the nurse's report for in camera inspection and the district court concluded that her report was reliable, thereby satisfying Jones-Bey's due process rights. Henderson, 13 F.3d at 1078; Mendoza v. Miller, 779 F.2d 1287, 1293 (7th Cir.1985).
 
 
 5
 Jones-Bey next argues (Issue IV) that the CAB lacked even "some evidence" as required under Hill to find him guilty of trafficking. He claims that the letter he wrote to the nurse was a love letter rather than an inducement to provide Percogesic. Admittedly, the letter never explicitly mentions any medication. But it is written in a very cryptic and sinister tone, and it was the CAB's prerogative as finder of fact to determine what the letter meant. Thus, the letter--coupled with the nurse's report that Jones-Bey had repeatedly requested Percogesic even after the prison doctor had ordered that he not receive it--provided "some evidence" to support the charge against him.
 
 
 6
 The final two issues Jones-Bey raises are somewhat more problematic. Jones-Bey argues (Issue III) that the Conduct Report and evidence adduced at his disciplinary hearing fail to prove all the elements of the offense for which he was convicted--"trafficking." Significantly, nowhere in their brief do the Respondents define "trafficking" or cite the relevant portion of the Indiana Code which prohibits "trafficking with an inmate." The ADPP defines trafficking simply "as defined in [the] Indiana Code." ADPP at 40. The Indiana Code, in turn, defines trafficking as:
 
 
 7
 A person who, without the prior authorization of the person in charge of a penal facility, knowingly or intentionally [ ] delivers, or carries into the penal facility with intent to deliver, an article to an inmate in the facility ... commits trafficking with an inmate.
 
 
 8
 Ind.Code § 35-44-3-9. Under prison regulations, a prisoner who induces or attempts to induce another person to commit trafficking is himself guilty of trafficking. ADPP at 40. Jones-Bey argues that even if he did ask the nurse to dispense Percogesic from the prison infirmary, there was no evidence that he ever asked her to sneak medicine to him from outside the prison, and hence no evidence that he violated the rule against trafficking.
 
 
 9
 Perhaps under § 35-44-3-9, merely delivering an unauthorized article to an inmate constitutes "trafficking." If so, then under the Indiana Department of Correction rules, Jones-Bey's attempt to induce the nurse to provide him with Percogesic after the prison doctor ordered that Jones-Bey not receive that drug would be a request for an unauthorized delivery, and hence a violation of the rule against trafficking. But whether in § 35-44-3-9 the "delivers" clause is separable from the "carries into the penal facility" clause--so that delivery alone of an unauthorized item to an inmate is proscribed by that statute--is not at all a clear question. The only three published Indiana cases discussing § 35-44-3-9 all involve smuggling articles into prisons from the outside. See State v. Owings, 600 N.E.2d 568 (Ind.Ct.App.1992), affirmed, 622 N.E.2d 948 (Ind.1993), Perkins v. State, 483 N.E.2d 1379 (Ind.1985), Roll v. State, 473 N.E.2d 161 (Ind.Ct.App.1985); see also Lockert v. Faulkner, 843 F.2d 1015 (7th Cir.1988). But none of these cases discuss whether the statute requires that an article be brought into the prison from the outside.
 
 
 10
 Even if the CAB wrongly construed § 35-44-3-9, however, that error would be one of state law, and as we said above, errors of state law are not grounds for federal habeas corpus relief. Still, an error in interpreting a state criminal law would violate the Constitution if it swept into the reach of that law conduct that previously had been legal or if it attached unanticipated consequences to that conduct. Bouie v. City of Columbia, 378 U.S. 347 (1964). We do not believe, however, that is what happened here. Jones-Bey can hardly claim that he believed that asking a prison nurse surreptitiously to provide him with a medication (whether from inside or outside the prison) that had been prohibited by the prison doctor was permissible conduct. Nor can we say that the CAB's interpretation of the trafficking statute to include Jones-Bey's conduct was so unexpected or outlandish such that no reasonable person could have expected it. See Becker v. Lockhart, 971 F.2d 172, 174-75 (8th Cir.1992). Thus, we cannot say that Jones-Bey was denied fair warning that he could be punished under § 35-44-3-9 for requesting that the nurse provide him with a proscribed medication.
 
 
 11
 Jones-Bey raises on final issue: he claims (Issue I) that he did not receive a disciplinary hearing before being convicted. Jones-Bey received notice on August 5, 1993 that he was to have a disciplinary hearing four days later; he requested a lay advocate to represent him at the hearing. At midnight on August 9, one "Lt. Brooks" arrived at Jones-Bey's cell to conduct the hearing. Because the prison's lay advocate had gone home for the night, Jones-Bey was forced to represent himself. He requested to see the reports and letter supporting the charges against him. According to Jones-Bey, Brooks stated that he did not have the documents with him, and left, saying he would continue the hearing when he returned with the documents. Jones-Bey claims that Brooks never came back. Several days later, Jones-Bey contends, he received a copy of the Report of Disciplinary Hearing, in which Lt. Brooks had found him guilty. If true, Jones-Bey's denial of a hearing would constitute a violation of his right to due process. Wolff, 418 U.S. 557-58.
 
 
 12
 The Respondents argued in both their response to Jones-Bey's petition and in their appellate brief that Jones-Bey's Report of Disciplinary Hearing proves that the hearing actually took place. But this argument assumes the very issue in contention: whether Lt. Brooks actually conducted a hearing at which Jones-Bey had the opportunity to present evidence and arguments in his defense, or whether he summarily decided against Jones-Bey and wrote the Report without completing the hearing.
 
 
 13
 The record contains no affidavits or evidence to establish that Jones-Bey actually received a disciplinary hearing before being judged guilty, nor did the district court make any factual findings on this issue. On this record, we cannot determine whether Jones-Bey received a hearing that comports with the requirements of Wolff. Accordingly, we must remand to the district court on this issue.
 
 
 14
 VACATED and REMANDED.
 
 
 
 **
 Herbert Newkirk is substituted for Charles E. Wright as Respondent pursuant to Fed.R.App.P. 43(c)
 
 
 *
 After examining the briefs and the record, we have concluded that oral argument is unnecessary in this case; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)