129 F.3d 119
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Kenneth EAGLIN, Plaintiff-Appellant,
v.
Clarence FAUST, Ronnie Williams, and Karen Schau,
[2] Defendants-Appellees.
 No. 96-1337.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 24, 1997.
Decided Oct. 15, 1997.[1]
 
 Appeal from the United States District Court for the Southern District of Illinois, No. 95-CV-302; Paul E. Riley, Judge.
 Before RIPPLE, ROVNER and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Kenneth Eaglin, an inmate at Menard Correctional Center in Illinois, filed this civil rights suit pursuant to 42 U.S.C. § 1983, claiming damages for injuries suffered as a result of his being kept in disciplinary segregation for 72 days, for an infraction of which he was later found to be innocent. The district court found that Eaglin suffered no deprivation of a liberty interest, and granted defendants' cross-motion for summary judgment.
 
 
 2
 On September 20, 1994, the prison guards found a homemade knife in Eaglin's cell, after searching the cell while Eaglin was at work. Following a disciplinary hearing, the Adjustment Committee found Eaglin guilty of possession of a weapon, and recommended revocation of six months' statutory good time, demotion to "C" Grade for six months, and disciplinary segregation for six months.
 
 
 3
 After a subsequent investigation, however, Eaglin passed a lie detector test, and another inmate confessed to placing the knife in Eaglin's cell. The disciplinary report was expunged; the revocation of good conduct credits was withdrawn; the demotion to "C" Grade was expunged; Eaglin received reimbursement for lost wages (because he could not work in the prison Print Shop while in disciplinary segregation); and he was reinstated in a comparable job in the Print Shop. Eaglin was returned from disciplinary segregation, where he had spent 72 days.
 
 
 4
 Eaglin argues that defendants violated his procedural due process rights when the Committee refused to call the witnesses he had requested. We find that a genuine issue of material fact remains as to whether Eaglin requested witnesses in a timely manner. An inmate has a due process right to "call witnesses ... in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff v. McDonnell, 418 U.S. 539, 566 (1974). An improper exclusion of witnesses in the inmate's defense is "an obvious procedural defect, and state and federal courts have reinstated good-time credits (absent a new hearing) when it is established." Edwards v. Balisok, 117 S.Ct. 1584, 1588 (1997). Such a claim is cognizable under § 1983. Id.
 
 
 5
 But the request for witnesses must be timely. Sweeney v. Parke, 113 F.3d 716, 720 (7th Cir.1997) ("It is not unreasonable to interpret Wolff as affording inmates the right to call witnesses when their requests to call witnesses are timely."); Miller v. Duckworth, 963 F.2d 1002, 1004 n. 2 (7th Cir.1992) (due process does not entitle prisoner to wait until day of hearing to request witnesses). The Committee here found that the request was not timely, and even if the request were timely, it would not have called the witnesses, since they found it sufficient proof of Eaglin's guilt that the weapon was found in his cell. Obviously, however, as the subsequent investigation proved, Eaglin could have established through witnesses that another inmate intentionally planted a weapon in his cell. The reasoning of the Committee was clearly flawed, given Eaglin's right to present witnesses under Wolff.
 
 
 6
 The "Disciplinary Report" form Eaglin filled out clearly states at the bottom: "I want to call Don Roth, Sgt. Roach, c/o Upchurch, Mr. Francis Sherman A63857." Eaglin has specified the testimony which he had hoped to obtain from these witnesses. Eaglin contends that Roche would have testified that he told Eaglin on September 20, 1994, that a "shank" had been found inside Eaglin's cell. Eaglin would have offered Upchurch's testimony that he found the homemade knife on September 20, 1994, and "witnessed" the disciplinary report written by Officer Ziegler. Eaglin maintains that Officer Roth would testify that on September 20, 1994, he told Eaglin that an informant had reported observing another inmate enter and then exit Eaglin's cell earlier that day. Sherman was Eaglin's cellmate at the time the knife was found and apparently would have testified that it was not owned by him or by Eaglin.
 
 
 7
 At his deposition, plaintiff testified that he filled out a witness request form and "sent it down in a timely manner." He added:
 
 
 8
 You will find on my copy of my ticket here that I had done so [filled out witness request]. But to get this on--they've got a policy here. They will take the inmate's copy or, you know, the copy off of it. They have got these ones like carbon paper that come through on the back of the sheets. They will take it off so you can't do this. But I had been burnt before by them. So, I took a piece of carbon paper and stuck [it] in there. And as I signed it and filled it out, I put this on the ticket that I got.... So that you can see it was there in a proper time. * * *
 
 
 9
 Then afterwards what you do is you tear it off. And then you send it into the adjustment committee, which I did. But they was acting so quickly, they more or less railroaded. There was no way that it could have--they could have gone out to the mailbox and got it from the time of the deadlock, but they didn't want to do that. And then when I got to the ticket, I mean the committee and asked for the following things, they denied, they just ignored this was even at the bottom of the ticket. They said, 'You never sent it in.' I said, 'There it is at the bottom of your ticket. You can read it.' And I asked for a continuance. I asked for witnesses.
 
 
 10
 In his affidavit supporting the motion for summary judgment, Eaglin states:
 
 
 11
 On September 20, 1994, following my receipt of such disciplinary report, and in full accordance with [IDOC] Rule 504.80, I made a proper and timely request for the witnesses, Sgt. Roche, Officers Upchurch and Roth, and Inmate Sherman, # A-63857, by naming them on the bottom of the disciplinary report, detaching it, and returning it, via institutional mail, to the Adjustment Committee. These witnesses would have informed the Adjustment Committee of the fact that the shank had been put into my assigned cell by another inmate.
 
 
 12
 Similarly, a grievance form submitted by Eaglin states: "I had listed my wittness [sic] on my tickett [sic] in the proper place. I ask[ed] Lt. Frost if he had called my wittness [sic] and he told me he had not and was not going to call them. When I tried to show him a copy of the Ill. ARs which gives me the those [sic] rights to present a defence [sic] he refused to look at them and ordered me out of the room."
 
 
 13
 Documents attached to the affidavit of Ellner support Eaglin's position that he did ask for witnesses, both in writing and in person, and the witnesses would have testified that on the day the knife was found, guards also told Eaglin that an informant reported that another inmate had gone into the cell and planted the knife.
 
 
 14
 These facts are disputed in an October 19, 1994 report responding to the grievance: "The summary documents that inmate requested witnesses but the witnesses were not called because inmate's request was not timely as inmate did not forward his request in accordance with procedure and it was the Committee's decision [that] the witnesses' testimony would be irrelevant because the contraband was found in inmate Eaglin's cell."[3]
 
 
 15
 Defendants' cross-motion for summary judgment does not discuss the question of whether Eaglin requested witnesses. Defendants' interrogatory answer asserts that plaintiff did request witnesses, but the request was "not timely received." A document entitled "Adjustment Committee Summary," dated September 22, 1994, includes a handwritten note stating that the request for witnesses was "[n]ot turned in at box." Defendants never get more specific than this. Eaglin, on the other hand, is very specific about exactly what he did with the form that contained his request for witnesses. (And, of course, the form itself clearly shows a request for witnesses.)
 
 
 16
 Given the serious factual disputes presented in this record, we cannot say that no genuine issue of material fact remains as to the request for witnesses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (summary judgment is improper if a nonmoving party goes beyond the pleadings and designates specific facts showing a genuine issue for trial). Consequently, we remand with instructions for the district court to resolve the factual issue as to whether Eaglin requested witnesses in a timely manner. If the district court determines that Eaglin's request for witnesses was timely, the court should also then conduct a Sandin hearing to determine if conditions of confinement during the 72 days in question met the standard set out in Sandin, and if so to then determine damages. We also note that the issue of qualified immunity remains open and may need to be addressed by the district court if it finds that a constitutional right exists. See Siegert v. Gilley, 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."); Lanigan v. Village of East Hazel Crest, Illinois, 110 F.3d 467, 472 (7th Cir.1997) (same).
 
 
 17
 REVERSED and REMANDED with instructions.
 
 
 
 [2]
 Other defendants were previously dismissed, and Eaglin does not contest their dismissal in this appeal. The three remaining defendants are the members of the Adjustment Committee
 
 
 [1]
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [3]
 The court is disturbed by the cavalier attitude of the Committee in determining without a hearing and without witnesses that Eaglin's guilt was irrefutable. Such a determination, amounting to strict liability, is the antithesis of due process