**William K. ZIMMERMAN,**
**Petitioner–Appellant,**

v.

**Cecil M. DAVIS, Respondent–Appellee.**

**No. 03–2445.**

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 9, 2004.*

Decided Feb. 9, 2004.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

158

Before POSNER, EASTERBROOK,
and WILLIAMS, Circuit Judges.

**ORDER**

A Conduct Adjustment Board found Indiana inmate William Zimmerman guilty of using marijuana. As a result the CAB revoked 180 days' earned credit time and demoted Zimmerman from credit-earning class I to class II. Several days later, pursuant to a longstanding administrative directive applicable statewide to all inmates found to have possessed or used a controlled substance, prison officials also notified Zimmerman that he would be denied contact visits for twelve months. Zimmerman petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 alleging that the CAB had denied him due process by not allowing him to call witnesses, and that the "random" drug test underlying his disciplinary conviction in fact had been administered in retaliation for submitting other administrative grievances. Zimmerman also complained about the visitation restriction. The district court denied his petition, and we affirm.

Zimmerman's troubles began in April 2001 with an urinalysis that tested positive for marijuana. A correctional officer charged Zimmerman with "use of an unauthorized substance," and Zimmerman received notice and was screened on the charge six days later. At that time Zim-merman pleaded not guilty and requested a hearing, but the screening report he signed bears a checkmark beside the pre-printed notation "I do not wish to call witnesses." Two days later Zimmerman notified the screening officer in writing that the report was wrong; Zimmerman reminded the officer that indeed he had said "yes" when asked whether he intended to call witnesses. Zimmerman asked the officer to correct the report, but he did not provide any information about who he intended to call, nor did he represent that the names of the witnesses had been given to the screening officer during the earlier meeting. No action was taken on Zimmerman's letter.

Later at the CAB hearing, Zimmerman moved for a continuance so he could call witnesses but was refused. The CAB told Zimmerman that he already had been given 17 days since the screening date to gather witness statements, though Zimmerman contends that he spent 14 of those days confined to his cell because of a quarantine for chicken pox. Zimmerman told the CAB that if given the chance he would call the nurse and correctional officer who collected the urine sample; both, he thought, would corroborate his defense that the sample should not have been submitted for testing because of its inadequate volume.

Indiana prisoners have a protected liberty interest in their good-time credits, *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir.1996), and credit-earning class, *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003), so they are entitled to the minimum requirements of due process when faced with the loss of either due to alleged misconduct, *see Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Due process mandates written notice of the charge at least twenty-four hours before the disciplinary hearing, an

opportunity to present evidence including witness testimony to an impartial decision maker, a written statement explaining what evidence the decision maker relied upon and the reasons for the disciplinary action, and "some evidence" in the record to support the outcome. *See Wolff,* 418 U.S. at 564–66, 570–571; *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir.2003).

■ Zimmerman first argues that he was denied his right to present witnesses at his hearing. All that Zimmerman says, however, is that he told the screening officer both in person and in his letter that he planned to call "witnesses." But Zimmerman does not dispute the state's contention that he never named his proposed witnesses before the day of the hearing, and throughout his various filings in the district court Zimmerman never even alleged that prior to the hearing he had identified to prison authorities as his witnesses the nurse and correctional officer who collected his urine sample. For this reason Zimmerman's argument fails. Though prison inmates do "have a due process right to call witnesses at their disciplinary hearing when doing so would be consistent with institutional safety and correctional goals," *Piggie,* 344 F.3d at 677, waiting to identify witnesses until the day of the hearing waives that right, *Miller v. Duckworth,* 963 F.2d 1002, 1004 n. 2 (7th Cir.1992). Zimmerman is correct that he was not foreclosed from calling witnesses simply because he did not identify them during the initial screening, *see id.,* but that does not alter the fact that he never identified them until the hearing itself. By then it was too late.

■ Zimmerman also argues that his selection for the "random" drug test that led to his disciplinary conviction was in fact targeted to retaliate against him for submitting a grievance challenging the administrative directive denying contact visits for prisoners found to have possessed or used controlled substances. Although the district court did not address this claim explicitly, the court did evaluate the disciplinary process for compliance with *Wolff* and *Hill,* and we have held that the protection inmates enjoy against arbitrary action by prison authorities "is found in the procedures mandated by due process," *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir.1999); *see also Black v. Lane,* 22 F.3d 1395, 1402 (7th Cir.1994); *McKinney v. Meese,* 831 F.2d 728, 733 (7th Cir.1987). Here, Zimmerman received notice of the charge, had a hearing where he presented evidence to an impartial CAB, and received a written explanation for the discipline imposed. And the urinalysis report alone provides some evidence for the CAB's finding of guilt. *See Webb v. Anderson,* 224 F.3d 649, 653 (7th Cir. 2000); *Thompson v. Owens,* 889 F.2d 500, 502 (3d Cir.1989) (holding that urinalysis results constitute some evidence of drug use); *Higgs v. Bland,* 888 F.2d 443, 449 (6th Cir.1989) (holding that a positive EMIT urinalysis test constitutes some evidence of drug use). Thus, although it appears that Zimmerman never even brought up his retaliation claim before the CAB (apparently it was not until his administrative appeals that Zimmerman first began to suspect that his selection for drug testing was not really random), the claim is without merit.

■ Finally, Zimmerman complains that the district court did not address his complaint about the visiting restriction imposed after his disciplinary conviction. A restriction of visitation is unrelated to the length of his custody, and the Supreme Court has held that habeas corpus relief is unavailable if the challenge is unrelated to

the fact or length of custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 489–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Montgomery v. Anderson*, 262 F.3d 641, 643–44 (7th Cir.2001).

AFFIRMED