**Darnell MAYERS, Petitioner,**

v.

**Ron ANDERSON, Respondent.**

**No. 3:99–CV–0672 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

March 28, 2000.

Darnell Mayers, Michigan City, IN, petitioner pro se.

Diane M. Mains, Indiana Department of Correction, Indianapolis, IN, for Ron Anderson, respondent.

### MEMORANDUM AND ORDER

SHARP, District Judge.

Petitioner Darnell Mayers, a prisoner confined at the Indiana State Prison, filed a petition for writ of habeas corpus challenging the loss of good time at a prison disciplinary hearing. On February 10, 2000, the court set aside the finding of guilt in case number ISP 99–05–0141, subject to a rehearing by the Conduct Adjustment Board ("CAB"). This case is now before the court on respondent Ron Anderson's motion to alter or amend order.

On May 10, 1999, Correctional Officer Jason Vickers wrote a conduct report charging Mr. Mayers with possession, introduction, or use of a controlled substance (marijuana). On May 13, 1999, the Conduct Adjustment Board found Mr. Mayers guilty, and recommended that he be demoted from good time Credit Class I to Credit Class III, and that he be deprived of ninety days of earned good time credits. Mr. Mayers unsuccessfully followed the Indiana Department of Correction ("IDOC") administrative appeals procedure described in *Markham v. Clark*, 978 F.2d 993 (7th Cir.1992), thus exhausting his "state court" remedies. He then filed a petition for writ of habeas corpus, asserting that he had been denied the right to present evidence at the hearing "because the C.A.B. would not consider the videotape that showed the real truth in the matter." This court granted the petition for writ of habeas corpus and ordered the respondent to ensure that a "full and fresh CAB hearing" be held, "at which the videotape and its contents are available to the petitioner and the CAB."

The respondent states that he "is unable to comply with the Court's order ... because the videotape no longer exists." He also asserts that the order granting the petition for habeas corpus should be set aside because there is "no indication in the record that Petitioner requested to view the videotape until his initial administrative appeal." The respondent submits the affidavits of Correctional Captain Daniel Forker and Conduct Adjustment Board Chairman Vince Forestieri in support of his motion to alter or amend judgment.

In his affidavit, Captain Forker states that in May 1999, it was the practice at the Indiana State Prison to reuse every security videotape every seven days. Accordingly, the videotape taken on May 9, 1999, was reused on May 16, 1999. Mr. Forestieri states that he has no recollection of the case, but the hearing report he prepared at the hearing "does not indicate that Mayers requested to view the security camera videotape. It was [his] usual practice to note on the hearing report if an offender requests information or evidence which was denied or not presented at the hearing ... ." Mr. Forestieri concludes "that I did not view the security camera videotape ... and that Mayers did not request to view the security camera videotape at the disciplinary hearing."

Mr. Mayers responds to the respondent's submissions with a statement "under penalty of perjury" that he asked the screening officer to put the videotape down on the screening report as something he wished to have reviewed at the hearing and that he "refused to put his signature on the screening report, because the screening officer would not put the videotape down as a witness." Mr. Mayers also submits the affidavit of Donald E. Mahon, his lay advocate at the hearing, in which Mr. Mahon states that he "seen [sic] Mayers ask the C.A.B. to look at the videotape." [1]

1. The report of disciplinary hearing form filled out by the CAB chairman after the hearing does not indicate whether or not Mr. Mayers had a lay advocate at the hearing—

■ State prisoners have a liberty interest in good time credits, under the Fourteenth Amendment's due process clause, that cannot be deprived without due process. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *see also Sandin v. Conner,* 515 U.S. 472, 487, 115 S.Ct. 2293, 2302, 132 L.Ed.2d 418 (1995) (distinguishing between a prison disciplinary sanction that will inevitably affect the duration of the inmate's sentence and a sanction that does not affect the duration of his sentence). The procedural protections, established by *Wolff v. McDonnell,* in connection with deprivation of good time credits in prison disciplinary hearings, are essentially advance written notice of the disciplinary charges, an opportunity to be heard and to present evidence and witnesses, and adjudication by a neutral committee that puts its findings on the record. *McKinney v. Meese,* 831 F.2d 728, 733 (7th Cir.1987). Once a prisoner has been granted these procedural protections, the role of a reviewing court "is limited to determining whether there was sufficient evidence to support the committee's decision." *Id.* at 733. A committee's determination of guilt is constitutionally valid if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Correctional Institution v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985).

■ The offense with which Mr. Mayers was charged occurred on May 9, 1999, the conduct report was written on May 10, he

that portion of the form is simply left blank. Report of disciplinary hearing forms viewed by this court in other cases either noted that no lay advocate was present or stated the name of the lay advocate. The notice of disciplinary hearing prepared by the screening officer establishes that "Mahon 856518" was appointed as Mr. Mayers's lay advocate. The respondent does not challenge Mr. Mahon's statement that he was present at the hearing, and this court specifically credits Mr. Mahon's statement that he was present at the CAB hearing as Mr. Mayers's lay advocate.

was screened on May 10, the hearing was conducted on May 13, and the security videotape was destroyed on May 16. Accordingly, the security videotape cited by Mr. Mayers was still in existence when the hearing was held and would have been available for use at the hearing.

*Wolff v. McDonnell* specifically provides that where an inmate loses good time credits as a result of a prison disciplinary action, the Fourteenth Amendment's procedural due process clause requires that he "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. at 566, 94 S.Ct. at 2979. The security videotape constitutes "documentary" evidence, the respondent does not suggest that CAB review of this tape would have put any institutional safety or correctional goals at risk, and this court can discern no potential hazard to institutional safety or correctional goals. Accordingly, if Mr. Mayers made a timely request to have the conduct adjustment board consider this evidence, the court concludes that he was entitled to have the board either consider the videotape or state on the record why it would not review the tape.

■ That the videotape no longer exists does not assist the respondent in any way if Mr. Mayers made a timely request to have the tape considered at the hearing because it was available when the hearing was held and its present unavailability is in no way the petitioner's fault.[2] On the

2. The Seventh Circuit has amplified the *Wolff* guarantees by holding that prisoners are entitled to disclosure of exculpatory evidence unless such disclosure would unduly threaten institutional concerns. *Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992). The respondent has suggested that "habeas corpus relief may be granted only on the basis of rights clearly established by U.S. Supreme Court precedent," citing 28 U.S.C. § 2254(d); *Sweeney v. Parke,* 113 F.3d 716 (7th Cir.1997), but that "the right to exculpatory evidence, recognized by the Seventh Circuit has not

other hand, if Mr. Mayers did not make a timely request for the CAB to view the videotape, then the fact that the tape still existed at the time of the hearing does not assist him in any way. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir.1999) (the due process clause does not require the consideration of evidence that could have been but was not presented at the disciplinary hearing). The key question before the court is when Mr. Mayers requested to have the tape considered.

■ The respondent notes that this court has upheld the practice of denying requests for witnesses at disciplinary hearings where the prisoner does not ask for the witness before he appears at the hearing. *see Billops v. Wright*, 803 F.Supp. 1439 (N.D.Ind.1992). The respondent then argues by analogy that Mr. Mayers "should have timely requested the security camera videotape at the screening or at the very least prior to the disciplinary hearing and most certainly prior to his initial appeal to the Superintendent."[3] The respondent further argues, citing *Miller v. Duckworth*, 963 F.2d 1002 (7th Cir. 1992), that a failure "to timely request the videotape as evidence ... amount[s] to a waiver of his right to have the evidence considered at the hearing."

This court considers a prisoner's failure to request specific witnesses before the date of the disciplinary hearing as a waiver of the right to have those witnesses' testimony at the hearing because the Indiana Department of Correction has a specific procedure by which inmates may request witnesses prior to the hearing. The screening stage of an IDOC disciplinary proceeding combines the functions of arraignment and a final pretrial conference. When he screens an inmate, one of the things IDOC policy requires the screening officer to do is to ask the accused to identify the witnesses he wishes to call, and record that information in a portion of the screening report entitled "I wish to call the following witnesses." This enables the screening officer to arrange for the witnesses to be at the hearing or to gather their written statements in time to be presented at the hearing. To allow a prisoner to disregard this established procedure by withholding his witness requests until the day of the hearing would unreasonably disrupt the orderly operation of prison disciplinary proceedings by causing hearings to be postponed while witnesses are summoned, or even cause hearings to be rescheduled where a witness is unavailable.

■ The screening report, however, has no section dealing with documentary or other types of evidence. Accordingly, this court will not accord the IDOC, the same presumption regarding documentary evidence, including videotapes, that it affords to the department with regard to witness testimony. The IDOC could require the inmate to identify his evidence as well as his witnesses at the screening stage, but it has not done so.[4] If the department does

been established by the Supreme Court." This is not a case, however, in which a prisoner was attempting to find out about or obtain potentially exculpatory information in a confidential prison investigative file. Here, the petitioner and the staff were fully aware that the incident was videotaped, and this court believes that *Wolff v. McDonnell* itself establishes Mr. Mayers's right to request that the disciplinary board consider the videotape just as he could have requested that the CAB consider information in his non-confidential prison packet.

3. The respondent relies heavily on the fact that the first time the request for the videotape appears in the written record of this

disciplinary action is in Mr. Mayers' administrative appeal. But the screening report is filled out by the screening officer and the report of disciplinary hearing is filled out by the CAB chairman. The first document completed by the prisoner himself is the disciplinary hearing appeal form. Thus, if prison officials do not record a prisoner's request for evidence at the screening stage or at the hearing, the first time it would appear in the written record is in the appeal form.

4. Indeed, according to Mr. Mayers's sworn statement, he asked the screening officer to list the videotape on the screening report as something he wanted the CAB to consider,

not give the inmate the opportunity to identify documentary or videotape evidence at the screening stage, which is apparently the only time before the hearing when he could do so, then it must afford the inmate the right to make his request at the hearing itself. To hold otherwise would completely eviscerate the *Wolff v. McDonnell* guarantee that inmates be allowed to present documentary evidence in their defense.[5]

█ The respondent suggests that Mr. Mayers did not ask for the videotape at the hearing and indeed did not mention the videotape until his initial appeal in which he asks the reviewer to take "a look at the 'video recorder tape' of the 200 rang [sic] at 10:30 a.m. because Officer Vickers lied in his report." Mr. Mayers's sworn statement, however, asserts that he asked unsuccessfully at the screening stage that the videotape be listed as something he wanted the CAB to review.

In his habeas corpus petition, Mr. Mayers states that "the C.A.B. would not consider the videotape that showed the real truth in the matter." In the portion of his petition entitled Supporting Facts for Ground two, Mr. Mayers asserts "I said at the 'C.A.B. hearing,' both officer[s] were telling a lie, because no one took marijuana from me, and I was not running, and the videotape could show I was telling the truth, but the C.A.B. would not use the videotape at my disciplinary hearing." Lay Advocate Donald Mahon's affidavit, in which he states that he heard Mr. Mayers ask the CAB to review and consider the videotape, supports this version of events.

The report of disciplinary hearing contains a section in which the CAB chairman is to note whether the inmate asked for a lay advocate, confrontation/cross-examina-

tion of hostile witnesses, or witnesses on his own behalf. The form does not, however, contain a section where the CAB chairman can note whether the prisoner requested documentary or physical evidence. In the past, this court has allowed CAB officials to supplement the record in some circumstances to explain or clarify matters recorded on the report of disciplinary hearing. But unlike other cases in which this court has credited CAB officials' statements clarifying a brief written record, this petitioner offers evidence contradicting the CAB chairman's statement, creating a factual dispute on the matters sought to be clarified.

In regard to the question of when Mr. Mayers requested to have the tape considered by the disciplinary hearing committee, Mr. Mayers's uncontested sworn statement establishes that he made his first request to have the videotape listed as a "witness" at the screening stage, but the screening officer rejected his request. The balance of the evidence also indicates that Mr. Mayers repeated his request at the hearing but that the CAB rejected his evidentiary request. The CAB chairman states in his affidavit that he has no personal recollection of this case (which is unsurprising given the number of CAB cases arising at a maximum security facility such as the Indiana State Prison). But Mr. Forestieri notes that "it was [his] usual practice to note on the hearing report if an offender requests information or evidence which was denied or not presented at the hearing . . ." This statement, however, is directly contradicted, regarding the proceedings in this case, by the affidavit of Mr. Mayers's lay advocate, which states that Mr. Mayers did ask the CAB at the hearing to review the videotape.

but the screening officer refused to record his request.

5. An inmate could bring documents that he has in his possession to a hearing without listing them at the screening stage. But he could not bring evidentiary materials that he knows exist but are not in his possession, such as unclassified documents in his prison packet or a security videotape, and to deny him the opportunity to ask for such materials either before the hearing or at the hearing itself would preclude him from ever being able to use them in his defense.

As a general rule of law, an ambiguous document will be construed against its author and any ambiguity therein should be resolved in favor of the opposing party. The CAB chairman's statement of general policy about his "usual practice" in filling out disciplinary hearing reports is directly contradicted by evidence of what happened at this particular hearing. This court will not credit a statement of general policy or "usual practice" in the face of sworn testimony that the general policy or usual practice was not followed in a specific case.

After reviewing the record and the parties' submissions, the court concludes that the petitioner asked twice—at the screening session and again at the CAB hearing—to have the CAB review the security tape that recorded the incident that formed the basis for the conduct report in case number ISP 99–05–0141. The videotape constituted evidence Mr. Mayers contended would establish his innocence of the charge against him. Given these facts, the CAB's failure to view the tape or state on the record that viewing the tape would be hazardous to institutional safety or correctional goals violated the Fourteenth Amendment's procedural due process clause which, where good time is at stake in a disciplinary hearing, requires that the prisoner "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. at 566, 94 S.Ct. at 2979.

For the foregoing reasons, the court **DENIES** the respondent's motion to alter or amend judgment [docket # 12] and reaffirms its February 10, 2000 order granting the relief requested in the petitioner's habeas corpus petition and setting aside the finding of guilt in case number ISP 99–05–0141, subject to the Indiana Department of Correction's right to conduct a full and fresh CAB hearing at which the videotape and its contents are available to the petitioner and the CAB. If, as the motion to alter or amend order suggests, the prison has reused the security videotape, rendering it unavailable, the Indiana Department of Correction should restore the good time credits the petitioner was deprived of as a result of the hearing and reinstate him in the credit time earning classification from which he was demoted as a result of the hearing.

**IT IS SO ORDERED.**