**Clyde PIGGIE, Petitioner,**

v.

**Craig HANKS, Respondent.**

**No. 3:99CV0561 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

May 15, 2000.

---

Clyde Piggie, Carlisle, IN, petitioner pro se.

David A Arthur, Indiana Attorney General, Indianapolis, IN, for Rondle Anderson, respondent.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Petitioner Clyde Piggie, a prisoner committed to the Indiana Department of Correction ("IDOC"), filed a petition pursuant to 28 U.S.C. § 2254, naming Indiana State Prison ("ISP") Superintendent Rondle Anderson as respondent. The response filed by the Attorney General of Indiana on Superintendent Anderson's behalf advised the petitioner, pursuant to *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), of the consequences of failing to respond to the response to order, and the petitioner

filed an elaborate traverse with exhibits, which this court has carefully examined.

■ When he filed his petition for writ of habeas corpus, Mr. Piggie was confined at the Indiana State Prison, in Michigan City, Indiana, and the disciplinary action he complains of occurred at the ISP. But on February 2, 2000, the petitioner advised the court that he has been transferred to the Wabash Valley Correctional Institution ("WVCF") in Carlisle, Indiana, where he remains. Because the proper respondent to a habeas corpus petition is the petitioner's current custodian, the court *sua sponte* substitutes WVCF Superintendent Craig Hanks as respondent, in place of Superintendent Anderson.

On May 7, 1999, Correctional Officer LaDona Ellis wrote a conduct report charging Mr. Piggie with sexual assault. Officer Ellis accused Mr. Piggie of squeezing her buttocks while she was working on the 500 west range of D Cell House. On May 12, 1999,[1] the Conduct Adjustment Board ("CAB") found Mr. Piggie guilty, sentenced him to two years in disciplinary segregation, and recommended that he be demoted from good time Credit Class II to Credit Class III. Mr. Piggie unsuccessfully utilized the Indiana Department of Correction's administrative appeals procedure described in *Markham v. Clark*, 978 F.2d 993 (7th Cir.1992), thus exhausting his "state court" remedies. He then filed a petition for writ of habeas corpus, asserting seven grounds for relief.

■ The Fourteenth Amendment's due process clause provides state prisoners a liberty interest in good time credits, and they cannot be deprived of good time credits without due process. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *see also Sandin v. Conner*, 515 U.S. 472, 487, 115 S.Ct. 2293,

2302, 132 L.Ed.2d 418 (1995) (distinguishing between a prison disciplinary sanction that will inevitably affect the duration of the inmate's sentence and sanctions that do not affect the duration of his sentence). The procedural protections established by *Wolff v. McDonnell*, in connection with deprivation of good time credits in prison disciplinary hearings, are essentially advance written notice of the disciplinary charges, an opportunity to be heard and to present evidence and witnesses, and adjudication by a neutral committee that puts its findings on the record. *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir.1987). Once a prisoner has been granted these procedural protections, the role of a reviewing court "is limited to determining whether there was sufficient evidence to support the committee's decision." *Id.* at 733. A committee's determination of guilt is constitutionally valid if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985).

■ The petitioner alleges that the CAB denied his request to call Officer Ellis as a witness, violating standards established in *Forbes v. Trigg*, 976 F.2d 308 (7th Cir.1992), *cert. denied*, 507 U.S. 950, 113 S.Ct. 1362, 122 L.Ed.2d 741 (1993). In *Forbes*, the Seventh Circuit held that "where the underlying facts of the charged misconduct are in issue, the testimony of the charging officer would be relevant (and perhaps indispensable), and prison officials would have to offer some penological justification (such as those outlined in the Indiana statute) for refusing to call such a witness." *Id.* at 318. In its report of disciplinary hearing, the CAB listed Officer Ellis as a witness, and she submitted a

---

1. In his response to order, the respondent refers to the hearing as having been held on May 11. According to the screening report, the CAB hearing was originally scheduled for May 11, but the report of disciplinary hearing is dated May 12 and the disciplinary hearing

appeal form states the date of the hearing as May 12. For the purposes of this memorandum, the court will adopt the date contained on the report of disciplinary hearing, and assume that the hearing occurred on May 12, 1999.

brief written statement affirming the conduct report.

■■■ This court is very sensitive to the values in *Forbes v. Trigg*. *See also Billops v. Wright*, 803 F.Supp. 1439 (N.D.Ind. 1992). But *Forbes* does not establish an absolute right for an inmate to call the reporting officer to testify because "inmates have no right to confront and cross examine adverse witnesses." *Rasheed–Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir.1992); *See also Wolff v. McDonnell*, 418 U.S. at 567–568, 94 S.Ct. at 2980 (the Constitution does not require confrontation and cross examination at prison disciplinary hearings). Moreover, there is no due process violation when testimony of denied witnesses would be irrelevant, repetitive, or unnecessary, *Forbes v. Trigg* 976 F.2d at 318, and the Seventh Circuit ultimately concluded that the failure of the officer who wrote the conduct report against Forbes to testify at the CAB hearing did not violate his due process rights. *Id.* at 318.

The respondent argues that the IDOC responded to the court's admonishment in *Forbes* to reform the policy of allowing staff members and inmates to unilaterally decide not to testify by having them submit a written statement prior to the hearing, so that the CAB can determine if live testimony is necessary. Officer Ellis wrote a brief statement affirming the conduct report as written, and the CAB chairman apparently determined that her live testimony would be unnecessary.

The petitioner does not suggest how Officer Ellis' live testimony would have been necessary to further establish the facts of the incident, which might justify calling her as a live witness under the *Forbes* rationale. Rather, it appears that Mr. Piggie sought her live appearance at the hearing so he could try to convince her to say that the incident was an accident, which constitutes the sort of confrontation and cross examination found in *Wolff v. McDonnell*, and *Rasheed–Bey v. Duck-*

*worth* not to be required by the due process clause.

■■ The petitioner asserts that he was denied an impartial decision maker because CAB member John Barnes, case manager for D Cellhouse, "investigated the alleged incident when Officer Ellis called Sgt. McKee on the radio." Due process requires that decision-makers in prison disciplinary proceedings be impartial and have no direct personal involvement in the incident that forms the subject of the hearing. *Wolff v. McDonnell*, 418 U.S. at 592, 94 S.Ct. at 2992; *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984).

■■■ The decision whether or not a person should be disqualified from hearing a conduct matter must be determined on a case-by-case basis. *Redding v. Fairman*, 717 F.2d at 1105. An official who is directly involved in the incident or is otherwise substantially involved in the incident should be disqualified, but an official who is only tangentially involved need not be disqualified. *Merritt v. De Los Santos*, 721 F.2d 598, 601 (7th Cir.1983). As this court reads the facts, Mr. Barnes arrived at the scene of the incident after it was over, did not participate in any official investigation of the incident, and had no personal knowledge of the material facts of the incident. Accordingly, Mr. Barnes was not sufficiently involved in the incident to require his disqualification from the CAB. Mr. Piggie also suggests that the CAB chairman was not impartial, but the court sees no basis in the facts presented to conclude that he was impartial within the meaning of *Wolff v. McDonnell*.

■■ The petitioner asserts that the CAB chairman did not correct necessary errors on the conduct report. He states that there are two inmates surnamed Piggie who resided on the 500 West Range, and that sometimes officers got the two mixed up. But the conduct report identifies this petitioner by name and correct

IDOC number (# 933044), so there is no apparent "error" on the conduct report for the CAB chairman to correct. The potential problem arises from Officer Ellis' second written statement, in which she states that "[t]he conduct report on Piggie # 884801 stands as written." The respondent advises the court in his response to order to show cause that IDOC # 884801 belongs to Franklin Piggie, presumably the inmate with whom the petitioner was occasionally confused.

In other circumstances, a mistaken identity claim might have some merit. But the petitioner did not deny at the CAB hearing that he was on the range when the incident occurred or assert that Franklin Piggie was the inmate who touched Officer Ellis. In his appeal from the CAB's finding of guilt, this petitioner admits that he was on the range and tried to "ease past" Officer Ellis (who was standing in the middle of the range), in order to get to his cell and avoid being written up for missing "roll-in," that Officer Ellis told him to "back up," and when he backed up, she called for assistance. Thus, the petitioner admits that he was the Inmate Piggie who was near Officer Ellis when this incident occurred, though denying that he squeezed Officer Ellis. There is simply no colorable suggestion in this case that Officer Ellis made a mistake at the time she wrote the conduct report in identifying this petitioner as the Inmate Piggie who she believed groped her.

■ The petitioner asserts that he did not receive a "full and fair review from higher authority" during the IDOC administrative appeals process because the post-conduct report statement made by Officer Ellis was detached from his appeal. But, as this court has already noted, the question of identification is not an issue in this case, and even if Officer Ellis' second statement did become detached from his appeal, it did not deprive him of a meaningful administrative appeal and does not entitle him to habeas corpus relief.

■ The petitioner alleges that he was not given a separate hearing, which he asserts is required by IDOC policy or practice, before being demoted to credit time earning class III, and that Superintendent Anderson did not approve the demotion as required by policy. But this court does not sit as a trier *de novo* in state criminal or administrative proceedings and does not sit as a court of general common law review. The collateral review envisioned by § 2254 focuses exclusively on violations of the Constitution, treaties and laws of the United States. *See Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). The claim presented in this portion of the petition does not implicate any of the procedural protections established by *Wolff v. McDonnell,* and does not entitle the petitioner to relief under § 2254.

■ The petitioner asserts that the CAB's finding of guilt "does not satisfy [the] 'some evidence' standard" of *Superintendent, Mass. Correctional Institution v. Hill.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.,* 472 U.S. at 455, 105 S.Ct. 2768; *McKinney v. Meese,* 831 F.2d at 733. Officer Ellis' conduct report clearly identifies this petitioner as the person who she believed squeezed her buttocks and the CAB credited her statement in the section of the report of disciplinary hearing entitled "finding of fact and evidence relied on." Officer Ellis' statement is sufficient by itself to support a finding of guilt under the "some evidence" standard established in *Superintendent v. Hill.*

■ Finally, the petitioner asserts that he was denied the right to present evidence at the hearing because he was not allowed to present a videotape recording events on D Cellhouse's 500 west range on the day in question to the CAB. The parties agree that in May 1999, the ISP video-

taped events occurring on the ranges in its cellhouses, and this incident therefore may have been captured on tape.

In his response to order, the respondent argues that "there is no evidence in this record that the videotape was still in existence at the time of the hearing on May 11[sic]. At that time, the tapes were reused soon after they were recorded, which has been changed in only the past several months. The tape was likely not even available." The incident between the petitioner and Officer Ellis occurred on May 7, 1999, and the hearing was conducted on May 12.

The respondent suggests that the videotape "was likely not even available," without providing any evidence to support that proposition. Recently, in *Mayers v. Anderson*, 93 F.Supp.2d 962 (N.D.Ind. 2000), this court reviewed another disciplinary action at the Indiana State Prison in which "the offense with which Mr. Mayers was charged occurred on May 9, 1999, the conduct report was written on May 10, ... [and] ... the hearing was conducted on May 13." *Id.* 93 F.Supp.2d at 965. Mr. Mayers challenged the CAB finding of guilt because the CAB refused to consider the videotape of the incident, which he insisted would clear him of the charges against him.

In that case, the respondent, Superintendent Anderson, submitted an affidavit from Correctional Captain Daniel Forker, stating "that in May 1999, it was the practice at the Indiana State Prison to reuse every security videotape every seven days." *Mayers v. Anderson*, 93 F.Supp.2d at 963. Pursuant to the practice in effect in May 1999 at the ISP, the security camera videotape that may have captured the incident between the petitioner and Officer Ellis would have been taped over on May 14, 1999, and would have been available for review at the petitioner's CAB hearing.

In *Mayers v. Anderson*, this court concluded that:

Wolff v. McDonnell specifically provides that where an inmate loses good time credits as a result of a prison disciplinary action, the Fourteenth Amendment's procedural due process clause requires that he "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. at 566, 94 S.Ct. at 2979. The security videotape constitutes "documentary" evidence, the respondent does not suggest that CAB review of this tape would have put any institutional safety or correctional goals at risk, and this court can discern no potential hazard to institutional safety or correctional goals. Accordingly, if Mr. Mayers made a timely request to have the conduct adjustment board consider this evidence, the court concludes that he was entitled to have the board either consider the videotape or state on the record why it would not review the tape.

*Mayers v. Anderson*, 93 F.Supp.2d at 964.

In this case, unlike *Mayers v. Anderson*, the respondent does not assert in his response to order that the petitioner did not ask for the videotape to be used as evidence prior to the CAB hearing. In his petition, Mr. Piggie states that he did request that "said tape be produced and examined at his hearing," and in his administrative appeal, he states that "upon being screened Piggie requested the videotape, but was denied![2] The screening offi-

---

2. The official response to Mr. Piggie's administrative appeal suggested that "this issue was not raised during your screening nor at the time of your hearing." But, as this court noted in *Mayers v. Anderson*, "the screening report is filled out by the screening officer and the report of disciplinary hearing is filled out by the CAB chairman. The first document completed by the prisoner himself is the disciplinary hearing appeal form. Thus, if prison officials do not record a prisoner's request for evidence at the screening stage or at the hearing," which the court found to be the case in *Mayers v. Anderson*, "the first time

cer stated that he wasn't allow[ed] to, and that it had to be upon an [sic] court order!" The balance of the evidence before the court is that this petitioner asked for the videotape at the screening stage and at the hearing but, as in *Mayers v. Anderson,* was told that he could not make such a request.

This court presumes that the ISP officials established a policy of videotaping events at the prison so that they could establish in retrospect what really happened during incidents in the cellhouses. Where facts have been in dispute in cases before this court, prison officials certainly have frequently attempted to establish their version of events as true by submitting videotapes in support of dispositive motions or presenting them at trial.

The videotape of the 500 west range of D Cell House at the ISP on May 7, 1999, may not have picked up the incident between the petitioner and Officer Ellis, or if it did pick up the incident it may not show clearly what happened, or if it did show what happened it might confirm Mr. Piggie's guilt. But it could also, as Mr. Piggie asserts, show that he did not touch Officer Ellis and therefore could not be guilty of sexual assault. Because the videotape that may have recorded the incident involving the petitioner and Officer Ellis was available when the hearing was held, and the petitioner apparently made a timely request for that evidence to be viewed by the CAB, the court concludes that he was entitled to have the board either consider the videotape or state on the record why it would not review the tape.

For the foregoing reasons, the court *sua sponte* substitutes Wabash Valley Correctional Facility Superintendent Craig Hanks as respondent in place of Indiana State Prison Superintendent Rondle Anderson, **GRANTS** the relief requested in the petitioner's petition for writ of habeas corpus, and sets aside the finding of

guilt in case number ISP 99–05–0156. If the Indiana Department of Correction finds that the videotape of the 500 west range of D Cell House at the ISP on May 7, 1999, still exists, it may conduct a full and fresh CAB hearing at which the videotape and its contents are available to the petitioner and the CAB. If, as the materials before the court suggest, the prison has reused the security videotape, rendering it unavailable, the Indiana Department of Correction should reinstate the petitioner in the credit time earning classification from which he was demoted as a result of the hearing in ISP 99–05–0156, and restore the good time credits he lost as a result of being demoted from credit time earning classification II to credit time earning classification III.

**IT IS SO ORDERED.**

---

it would appear in the written record is in the appeal form." *Mayers v. Anderson,* 93

F.Supp.2d at 966 n. 3.