Clyde PIGGIE, Petitioner–Appellant,

v.

Zettie COTTON,* Respondent–Appellee.

Cylde Piggie, Petitioner–Appellant,

v.

Zettie Cotton, Respondent–Appellee.

Nos. 02–3068, 02–2083.

United States Court of Appeals,
Seventh Circuit.

Submitted June 18, 2003.

Decided July 18, 2003.

Opinion Sept. 4, 2003.**

---

* Zettie Cotton, the warden of the Pendleton Correctional Facility where Piggie is presently confined, has been substituted for Daniel McBride as respondent pursuant to Fed. R.App. P. 43(c)(2).

** Our original disposition of these cases was by unpublished order under Circuit Rule 53. We have subsequently decided to reissue the decision as a published opinion.

Clyde Piggie (submitted a brief), Pendleton, IN, pro se.

Scott A. Kreider (submitted a brief), Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before MANION, ROVNER, and DIANE P. WOOD, Circuit Judges.

PER CURIAM.

Indiana inmate Clyde Piggie seeks habeas corpus relief from two disciplinary convictions. Because he lost good-time credits as a result of each conviction, the petitions were properly brought under 28 U.S.C. § 2254, *see Montgomery v. Anderson*, 262 F.3d 641, 643 (7th Cir.2001), and the proceedings before the disciplinary board had to comply with minimal standards of due process, *see Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 453, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, *see Wolff*, 418 U.S. at 564, 94 S.Ct. 2963, an opportunity to present testimony and documentary evidence to an impartial decision-maker, *id.* at 566, 570–71, 94 S.Ct. 2963, and a written explanation for the discipline, *id.* at 564, 94 S.Ct. 2963, that is supported by "some evidence" in the record, *see Hill*, 472 U.S. at 454–55, 105 S.Ct. 2768; *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000). The district court denied Piggie's petitions, concluding that the proceedings in each case satisfied those standards. We consolidated the appeals, and now affirm in both cases.

### 1. Appeal No. 02–3068

Appeal no. 02–3068 comes to us after remand. In that case Piggie challenged the conduct adjustment board's ("CAB") decision finding him guilty of sexual assault for grabbing a correctional officer's buttocks when he passed her in a prison hallway on May 7, 1999. The facts are explained in detail in *Piggie v. McBride*, 277 F.3d 922 (7th Cir.2002) *("Piggie I")*. Piggie contended that the CAB violated his due process rights by refusing to view a surveillance tape of the incident that he maintains would have exculpated him, despite his requests during the screening process and at the CAB hearing. The district court, Judge Sharp, initially contemplated granting the writ but later reconsidered on the ground that the court was bound by the prison superintendent's finding on administrative appeal that Piggie had not requested the tape. We vacated and remanded for further proceedings, concluding that § 2254(e)(1)'s presumption of correctness does not apply in appeals from prison disciplinary convictions. *Id.* at 925–26. We instructed the district court to consider two questions on remand: "(1) whether the surveillance tape has been erased by prison officials, and if so, when did they erase it; and (2) whether Piggie requested through authorized prison officials that the CAB view the surveillance tape, and if so, when did he do so." *Id.* at 926. If Piggie made a request either before or at the CAB hearing and the tape still existed at the time of his request,

then, we advised, relief should be granted. *Id.*

■ The district court appointed counsel to represent Piggie on remand and convened an evidentiary hearing. Piggie has not requested that a transcript of the hearing be prepared and included as part of the appellate record, though he had the burden to do so. *See* Fed. R.App. P. 10(b)(2); *LaFollette v. Savage,* 63 F.3d 540, 544 (7th Cir.1995). We will dismiss an appeal if the absence of the transcript precludes meaningful review. *LaFollette,* 63 F.3d at 544; *Woods v. Thieret,* 5 F.3d 244, 245 (7th Cir.1993). Meaningful review is possible here, however, since the parties do not dispute the substance of the witnesses' testimony at the evidentiary hearing. It is undisputed that Piggie testified that during the screening process he asked that the CAB view the tape but that Officer Nowatzke told him that the tape could not be viewed without a court order. Further, he and his lay advocate asserted that Piggie repeated his request for the tape at the CAB hearing, but the CAB chairman, Vince Forestieri, said that there was no tape. In contrast, Officer Nowatzke testified that he did not specifically re-call Piggie's case, but said that he typically recorded pre-hearing requests by prisoners for physical evidence in a "screening" report, and he made no such recording when screening Piggie. The three CAB members who conducted Piggie's hearing testified that they remembered the case, and neither Piggie nor his lay advocate requested that the surveillance tape be viewed at the hearing on May 12, 1999. They further stated that normally the CAB transcribed such requests on their report of the hearing, but that Piggie's report contained no notation to that effect. Captain Daniel Forker, who was responsible for surveillance taping in May 1999, testified that surveillance tapes were typically recycled every six days unless withdrawn. Finally, another prison official testified that a recent search for the surveillance tape of the incident had been fruitless.

In light of these divergent versions of events, the district court considered the case "a close one because it fundamentally comes down to a question on credibility" but went on to resolve that question against Piggie, finding the prison officials more credible. In doing so, the court noted that the "paper evidence" corroborated the officials' claim that Piggie did not ask that the tape be viewed until his administrative appeal two weeks after the CAB hearing, and according to Captain Forker, by that time the tape had been recycled. Because Piggie did not timely request the tape, the court, in accordance with *Piggie I,* concluded that the CAB could not have denied Piggie due process by refusing to view it. *See Piggie I,* 277 F.3d at 925 (citing *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir.1999) (rejecting contention that due process requires later "consideration of evidence that could have been but was not presented at the hearing")).

■ On appeal Piggie maintains that he did, in fact, make a timely request for the tape. We review the district court's factual determinations for clear error, and under that standard we will affirm so long as the district court's account is plausible in light of the evidence. *White v. Godinez,* 301 F.3d 796, 801 (7th Cir.2002) (citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Special deference is given to determinations based on credibility findings, which "can virtually never be clear error." *Anderson,* 470 U.S. at 575, 105 S.Ct. 1504. In spite of this deferential standard, Piggie argues that the district court should have believed him instead of the prison officials. He contends that the

district court clearly erred because the court purportedly found the same screening officer and CAB chairman's testimony *incredible* in a nearly identical case concerning a pre-hearing request for a surveillance tape. *See Mayers v. Anderson,* 93 F.Supp.2d 962 (N.D.Ind.2000) (Sharp, J.). Indeed, in that case the prisoner, Darnell Mayers, likewise asserted that the CAB refused to view a surveillance tape of the incident despite his requests at his screening interview and again at the CAB hearing. The state contended that Mayers did not mention the tape until his initial administrative appeal, pointing to the absence of any notation of the alleged request on the screening or hearing reports. *Id.* at 967. Specifically, Chairman Forestieri averred that he did not recall Mayers' case but that his usual practice was to record such requests. The district court, however, was unconvinced, noting that neither the screening nor the hearing report had sections concerning documentary or other types of evidence. *Id.* at 966–67. Without holding an evidentiary hearing, the court found that Mayers indeed had made a timely request for the tape and granted the writ. *Id.* at 967–68.

The fact that the district court reached a different conclusion in Piggie's case does not render its determination clearly erroneous. In Piggie's case the court conducted an evidentiary hearing, and evidence adduced at that hearing supports the court's conclusion. In particular, we note that here, unlike in *Mayers,* the state corroborated Nowatzke and the CAB members' testimony with reports from other cases in which prisoner requests for surveillance tapes were noted. And in Piggie's case the CAB members specifically recalled that Piggie did not request the tape at the hearing. Piggie contends that it is unbelievable that the CAB members could remember his hearing but not Mayers'. But the district court found the CAB members'

testimony credible, and we do not second-guess the district judge on matters of credibility. *See Anderson,* 470 U.S. at 575, 105 S.Ct. 1504; *United States v. Stokes,* 211 F.3d 1039, 1045 (7th Cir.2000). Based on the record in this case, we see no reason to disturb the district court's decision to credit the prison officials' testimony over Piggie's.

■ Piggie next attacks the proceedings on remand, arguing that he is entitled to a new hearing because the district court improperly placed the burden of proof on him and his appointed counsel was ineffective. These attacks also are unavailing. Although the court noted, correctly we think, *see Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir.2002), that a habeas corpus petitioner generally bears the burden of establishing that he or she is entitled to relief under § 2254, the district court did not put the burden on Piggie on remand. To the contrary, the court went on to assume that, in this case, the state had the burden to show that Piggie failed to timely request the tape. The court concluded that the state met that burden, and, as set forth above, that conclusion was not clearly erroneous. Piggie argues that his appointed counsel was ineffective for, among other alleged deficiencies, failing to call certain witnesses, failing to prepare him for testifying, failing to make certain evidentiary objections at the hearing, and failing to thoroughly investigate his case. The record does not reveal any inadequacy on the part of appointed counsel, but even assuming that counsel's performance was deficient, Piggie would not be entitled to relief. There is no constitutional right to effective counsel in a habeas corpus proceeding. *Pitsonbarger v. Gramley,* 141 F.3d 728, 737 (7th Cir.1998); *Barkauskas v. Lane,* 946 F.2d 1292, 1294 (7th Cir.1991).

## 2. *Appeal No. 02–2083*

We next turn to appeal no. 02–2083, which concerns Piggie's subsequent conviction for being a habitual rule violator. In May 1999, the Indiana Department of Corrections' Adult Disciplinary Policy defined "habitual conduct rule violator" as an inmate who had been found guilty of four unrelated violations within one year. In the year preceding Piggie's May 1999 conviction for sexual assault, he had been found guilty of at least three other rule violations: attempted trafficking in April 1999; tobacco use in February 1999; and being in an unauthorized area in December 1998. Accordingly, following his sexual assault conviction, Piggie was charged with being a habitual rule violator. Officer Nowatzke prepared the conduct report. According to Piggie, upon receiving notice of the charge, he asked that Nowatzke appear as a witness at his hearing and Nowatzke instead agreed to provide a written statement. When Nowatzke had not done so by the time of the hearing, Piggie requested a continuance, which was denied. The screening report, however, does not reflect that Piggie requested any witnesses and neither does the report of the hearing. Based on Piggie's conduct history, the CAB found him guilty, imposed two years' disciplinary segregation, and revoked 365 days of his good-time credit.

After his administrative appeals were unsuccessful, Piggie filed his petition for a writ of habeas corpus alleging that (1) he was denied the right to call Officer Nowatzke as a witness; (2) his case was not heard by an impartial decision-maker because two of the three CAB members had found him guilty of violations predicating his habitual charge; and (3) the guilty finding was not supported by some evidence. The petition was assigned to Judge Tinder, who granted the writ on the strength of Judge Sharp's initial ruling invalidating Piggie's 1999 predicate conviction for sexual assault. But, as explained previously, Judge Sharp subsequently reconsidered that ruling and dismissed Piggie's petition. The state then moved for relief from Judge Tinder's judgment under Federal Rule of Civil Procedure 60(b), and in November 2001 Judge Tinder granted the motion and reopened the case. The court also gave Piggie thirty days to reply to the state's arguments that his disciplinary proceeding otherwise satisfied due process. Piggie did not submit a reply. He did, however, file a supplemental response to the state's Rule 60(b) motion in February 2002, urging the court to reconsider in light of our decision in *Piggie I* vacating and remanding the sexual assault case for further proceedings.

Judge Tinder denied Piggie's petition the following month. The court concluded that, although proceedings concerning the sexual assault conviction were still ongoing, the conviction remained valid and, thus, sufficient evidence supported the habitual charge. The court did not discuss the merits of Piggie's other due process arguments, explaining that Piggie had declined "the court's invitation . . . to identify any procedural infirmity entitling him to relief."

■ Piggie argues that the district court erred by ignoring the other two due process claims raised in his habeas corpus petition—namely, that he was denied the right to call witnesses and to an impartial decision-maker. The state, in turn, argues that Piggie waived those claims by failing to submit a reply in response to the district court's November 2001 order. But waiver is the intentional relinquishment of a known right, *see United States v. Rand Motors,* 305 F.3d 770, 773 (7th Cir.2002), and under the circumstances here we cannot say that Piggie intended to abandon

his due process claims by not proffering a reply. Nor can we say that Piggie was obdurate for not doing so. *See Cox v. McBride*, 279 F.3d 492, 493 (7th Cir.2002). The district court's November 2001 order gave Piggie time to *"further* reply to the respondent's arguments that there was no procedural infirmity" entitling him to relief. (Emphasis added.) Piggie did not do so, he says, having already identified several procedural infirmities in his petition and responded to the state's arguments in a lengthy traverse. The state acknowledged as much in its Rule 60(b) motion, informing the court that "there remain two procedural challenges to the disciplinary action that must be addressed by the Court"; that "it appears that petitioner has already filed his brief on those issues"; and, therefore, "the two procedural issues are ripe for decision." The district court therefore should have at least addressed the merits of those claims before denying the petition.

 But waiver or no waiver, it is readily apparent that Piggie's due process claims lack merit, and thus we need not remand them to the district court for initial consideration. Piggie claims that the CAB violated his due process rights by refusing to permit him to call Officer Nowatzke as a witness. Although prison disciplinary committees may deny witness requests that threaten institutional goals or are irrelevant, repetitive, or unnecessary, they may not exclude witnesses requested by an offender with no explanation at all. *See Whitlock v. Johnson*, 153 F.3d 380, 388 (7th Cir.1998); *Forbes v. Trigg*, 976 F.2d 308, 317–18 (7th Cir.1992). Nor may staff members simply refuse to appear based on a blanket institutional policy. *Id.* at 318. Here, the CAB provided no reason for refusing Piggie's alleged request for Nowatzke's appearance. But even if this was error, Piggie has not established that he

was prejudiced. *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir.1991) (harmless error analysis applies to prison disciplinary proceedings). He does not indicate what Nowatzke's testimony might have been or how it might have aided his defense, particularly given that Piggie concedes that with his sexual assault conviction he had the requisite number to make him a habitual rule violator. Further, to the extent that Piggie envisioned calling Nowatzke as an adverse witness in order to question the basis for his conduct report, we note that he had no right to confront or cross-examine adverse witnesses in his disciplinary proceeding. *See Rasheed–Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir.1992).

 Piggie also failed to demonstrate bias. Adjudicators are entitled to a presumption of honesty and integrity, *see Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), and thus the constitutional standard for impermissible bias is high, *see Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). CAB members are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding. *Pannell v. McBride*, 306 F.3d 499, 502 (7th Cir.2002); *see also Liteky v. United States*, 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("Also not subject to deprecatory characterizations as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings. It is long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.").

 Piggie maintains that two of the CAB members were biased because they had found him guilty in previous cases, including the sexual assault case that predicated his habitual charge. Their bias was displayed, he claims, when they suggested

that he be charged as a habitual rule violator upon his fourth conviction whereas other repeat offenders with worse conduct records were not charged as habitual violators until their fifth convictions and were punished less severely than he. But given Piggie's history of misconduct, we see nothing unseemly about the CAB members' suggestion. And on administrative review the department upheld the sanctions imposed by the CAB, concluding that they were consistent with the disciplinary code and Piggie's "extensive" conduct history. This court does not sit in review of the correctness of the CAB's decision; Piggie is entitled to relief only if the procedures used to arrive at that sanction do not comport with due process.

 Due process does forbid officials who are directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof, from serving on the board hearing the charge. *Whitford v. Boglino,* 63 F.3d 527, 534 (7th Cir.1995). To this end, in his brief Piggie also suggests that one CAB member, Kenneth Braun, was a witness to his use of tobacco in February 1999, another offense that predicated the habitual charge. Piggie does not provide any specifics, however, and the record does not reflect the degree of Braun's personal involvement in the tobacco case or the corresponding investigation. The record does reveal that Piggie did not raise the issue of Braun's involvement in the tobacco case in his administrative appeals or in his habeas corpus petition. Thus, he cannot now urge it as a ground for obtaining relief. *See Eads v. Hanks,* 280 F.3d 728, 729 (7th Cir.2002) (prisoner procedurally defaulted claim of impartiality by failing to raise it on administrative appeal); *Rittenhouse v. Battles,* 263 F.3d 689, 694–95 (7th Cir. 2001) (claims not presented in habeas corpus petition are waived). In any event,

Braun's personal involvement in the tobacco case would not necessarily preclude him from later adjudicating the habitual charge. It seems to us that a rule automatically disqualifying any CAB member from adjudicating a prisoner's habitual case because he or she was a witness to events underlying one of the prisoner's prior convictions would be infeasible. As we recognized in rejecting claims of bias based on prior lawsuits, "requiring each staff member who is the subject of a separate lawsuit to disqualify himself from sitting in judgment of that inmate would heavily tax the working capacity of the prison staff." *Redding v. Fairman,* 717 F.2d 1105, 1113 (7th Cir.1983). Nonetheless, we need not pursue the question here, since Piggie has forfeited the issue. Because Piggie has not shown that the CAB members' adjudication of his previous cases unfairly prejudiced him, his claim of bias fails.

The judgments of the district court in both cases are AFFIRMED.