Amos WILSON, Petitioner–Appellant,

v.

Cecil DAVIS, Superintendent, Indiana
State Prison, Respondent–
Appellee.

Nos. 03–1431, 03–2136.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 3, 2004.*

Decided March 2, 2004.

Amos Wilson, pro se, Michigan City, IN,
for Petitioner–Appellant.

Stephen R. Creason, Joby Jerrells, Office of the Attorney General, Indianapolis,
IN, for Respondent–Appellee.

Before EASTERBROOK, MANION,
and EVANS, Circuit Judges.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f).

## Order

In October 2001 a prison disciplinary panel concluded that Amos Wilson violated prison rules by physically resisting a staff member. Then in January 2002 another board found Wilson to be an habitual rule violator. These decisions cost him a total of 455 days of credit time. Wilson filed petitions for writs of habeas corpus under 28 U.S.C. § 2254. The district court denied both.

1. Officer Schoettmer filed a conduct report relating that Wilson, after being escorted to his cell following recreation, twice resisted efforts by Schoettmer, Officer Sparks, and Sergeant Biddle to undo his handcuffs by "jerking away and turning towards" them. Wilson disputed the report, arguing that he never resisted. According to Wilson, he was the victim of battery by the guards. Wilson claimed that two guards other than the three named in the report could verify his version of events, but that he did not know their names. Wilson requested that five prison employees be called to testify at the hearing: Schoettmer, Sparks, Officer Bailey (who had been in charge of Wilson's control pod on the day of the incident) and two "John Does." The CAB received written statements from Bailey, Sparks, and Biddle and heard live testimony from Schoettmer and Wilson. Schoettmer, Sparks, and Biddle repeated their prior positions; Bailey stated that he had not been present and had no evidence to give. The board found that Wilson had resisted an officer, revoked 90 days of his earned-credit time, and lowered Wilson's credit-earning class to Class III.

Wilson contended in the district court that the state denied him due process of law by failing to honor his request for testimony by the two unnamed guards. Counsel for Indiana offered only the supercilious reply that it would have been impossible to do so, because the prison did not employ anyone by the name of "John Doe." The district judge might well have determined that this "response" called into question the *bona fides* of the state's position. Bypassing this possibility, the judge held that Wilson loses because the identity of the two persons "remain unknown."

Inmates have a constitutional right to call witnesses at prison disciplinary hearings. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). But prison officials may exclude evidence if it is "unduly hazardous" to "institutional safety or correctional goals," and inmates may not call witnesses whose testimony would be irrelevant, repetitive, or unnecessary. *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir.2003); see also *Forbes v. Trigg,* 976 F.2d 308, 316–17 (7th Cir.1992). The burden is on the state to offer a rational explanation for the denial of an inmate's request for witnesses. See *Ponte v. Real,* 471 U.S. 491, 499, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985).

What happens when the inmate does not identify the desired witnesses? The district judge held that the inmate's claim then fails; Wilson responds, with some support, that the prison must do the identifying, because it has better records. See *Kingsley v. Bureau of Prisons,* 937 F.2d 26 (2d Cir.1991). That the prison has records does not mean that they would suffice, however; the Constitution does not demand the impossible. Moreover, sometimes the prison can't produce a requested witness because the inmate is telling a tall tale, and the "unidentified" witnesses do not exist. Wilson called Bailey as a witness, and it turned out that he had no knowledge of the events; what reason is there (beside Wilson's say-so) to think that the two Does would have been any more useful?

The usual way to handle disputes about the existence and identity of witnesses is to engage in discovery. Only if that fails to reveal the identity (and probable testimony) of the witnesses is it essential to worry about the significance of missing evidence and the allocation of burdens among the litigants. We followed the usual path in *Fillmore v. Page,* 358 F.3d 496, 506–09 (7th Cir.2004), slip op. 13–17, when dealing with a contention that unidentified guards had beaten the plaintiff. *Fillmore* declined to hold that the prison is unconditionally responsible for discovering the identity of the accused persons. Instead the parties should build a record adequate to support findings by the judge about the identity of the persons in question. Yet an unconditional obligation on the prison's part is the only line of argument Wilson offers. He did not initiate any discovery in the district court in an effort to show the identity (or even the existence) of these persons, or learn what they would have said had they been called as witnesses. He therefore has not supplied an adequate reason to set aside the conduct board's order.

█ Still, one cannot avoid thinking about the state's asinine response that it does not employ anyone named "John Doe." The prison did *not* tell the district court that the Does are figments of Wilson's imagination. It did not say that it had tried but failed to identify them (perhaps by asking Schoettmer, Sparks, and Biddle, or examining its records of persons assigned to the area at the time). An inference could be drawn that the prison knows or readily could learn their identities and is playing games in an effort to avoid their testimony. That would violate Wilson's rights under *Wolff.* We deem it prudent to return this proceeding to the district court for further inquiry, using discovery if necessary, into the question

whether it is possible to identify these persons (if they exist)–and to learn, if they can be identified, whether they have material evidence.

2. Code 105 of the Adult Disciplinary Procedure for Indiana prisons defines an "habitual conduct rule violator" as an inmate who has been found "guilty of four (4) Class A, B, or C rule violations involving four (4) unrelated incidents within the last six (6) months." The conduct report alleges that, in less than four months, Wilson had been found guilty of one Class A violation, four Class B violations (including the October 2001 decision dealt with above), and one Class C violation. A hearing was convened on the charge, but Wilson did not appear. The board found him guilty, deducted 365 days' earned-credit time, and placed Wilson in disciplinary segregation for one year.

Wilson appealed this decision through the administrative process, alleging that prison officials, in order to retaliate against him for previous grievances, did not notify him of the hearing. His appeals were unavailing, and Wilson contended in the district court that he had not received notice of the charge and that members of the board had been biased.

█ On appeal from the district judge's adverse decision, Wilson has neglected even to argue that he had any defense to offer. It is therefore hard to see how notice could have mattered (even if he received none, a contention that the prison denies). Wilson has had plenty of time since the board's decision, yet in the federal litigation he has not explained what he would or could have said in opposition. See *Piggie v. Cotton,* 342 F.3d 660, 666 (7th Cir.2003). Even if we were to disregard the finding in October 2001 that Wilson resisted the efforts to remove his handcuffs, five Class A, B, or C violations would remain–one more than is necessary

for the CAB to find that Wilson is an habitual offender. We are left to conclude that he would have been disciplined no matter what. As for the claim of bias–which could have affected the penalty for an established violation–Wilson has failed to demonstrate any shortcoming. Talk is cheap; details that could show bias are missing.

The judgment in appeal 03–1431 is VACATED, and the case is REMANDED to the district court for further proceedings consistent with this order. The judgment in appeal 03–2136 is AFFIRMED.