**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 6, 2019[*]
Decided February 6, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-2086

| | |
|---|---|
| JAMES E. MANLEY,<br>    *Petitioner-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:16-cv-03292 |
| KEITH BUTTS,<br>    *Respondent-Appellee*. | Tanya Walton Pratt,<br>*Judge.* |

**O R D E R**

Indiana inmate James Manley petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 to contest the discipline he received—loss of earned good-time credits and demotion to a lower credit-earning class—after a hearing officer at New Castle Correctional Facility found him guilty of being a "habitual conduct rule violator." The district court denied Manley's petition, concluding that Manley received due process during his disciplinary proceedings. We agree and affirm the judgment.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

No. 18-2086                                                                                                                                Page 2

        In 2016, a prison disciplinary officer charged Manley with being a "habitual conduct rule violator," which the Indiana Department of Corrections defines as an inmate who has been found guilty of five "unrelated" Class C conduct offenses within six months. *See* IND. DEP'T OF CORR., MANUAL OF POLICIES & PROCEDURES, No. 02–04–101, App. I: Offenses, at 3 (June 2018), www.in.gov/idoc/files/02-04-101%20Appendix%20I%206-4-2018.pdf.). The conduct report specified six convictions that Manley had accrued over a six-week period, each for refusing a housing assignment in violation of the Department's disciplinary code section C-356. Manley was notified of the charge later that day and was given a printout listing the underlying offenses and dates of conviction; the six charges were grouped and adjudicated at disciplinary hearings held on three different days before hearing officer Tyrone Thompson.

        At a hearing on the habitual-violator charge, Thompson found Manley guilty. Thompson rejected Manley's argument that several of the predicate offenses were "related" because more than one of the disciplinary hearings had been held on the same day; he deemed the six offenses "unrelated" based on the underlying conduct reports, which showed that each violation occurred on a different day. In one of its standing orders, the facility defines multiple assignment-refusal offenses as "unrelated" if the refusals occur on different days. As a result of the conviction, Manley lost 90 days of good-time credit and was demoted to a lower credit-earning class.

        Manley appealed to Warden Keith Butts, challenging this disciplinary decision on several grounds, including the adequacy of the notice for his hearing and the accuracy of the conduct report. Butts denied Manley's administrative appeal, as did the state appeal review officer.

        Manley then petitioned for writ of habeas corpus under 28 U.S.C. § 2254. The district court denied his petition as well as his subsequent motion to alter or amend the judgment. *See* FED. R. CIV. P. 59(e).

        On appeal, Manley first contends that Thompson was not impartial because he reviewed the underlying conduct reports. But examining the factual basis for guilt, and then determining that such a basis exists, does not amount to bias or an impermissible investigation. *See Piggie v. Cotton*, 342 F.3d 660, 666–67 (7th Cir. 2003). Thompson appropriately reviewed the earlier reports to establish the dates of the qualifying offenses and thus determine whether the habitual-violator charge was supportable.

Manley next argues that he did not receive sufficient notice that his repeated refusal to accept housing assignments would render him a habitual-rule violator because he did not learn of the standing order defining "unrelated" until after his hearing. But Manley did not raise this argument in his habeas petition, so it is deemed waived. *See Ben-Yisrayl v. Neal*, 857 F.3d 745, 747 (7th Cir. 2017). In any event, even without specific awareness of the standing order, Manley reasonably could be expected to understand that multiple refusals of direct orders—given by a variety of officers on different days—are not "related" offenses in the commonsense meaning of the word.

Third, Manley contends that he received inadequate administrative review of the disciplinary decision because Butts did not specifically address the arguments that formed the basis of his appeal. To the extent that Manley was entitled to meaningful review at the administrative level, he received it. The warden's response was not "merely pro forma." *Forbes v. Trigg*, 976 F.2d 308, 320 (7th Cir. 1992). Rather, Butts generally addressed the substance of Manley's arguments when he stated that he had reviewed the conduct report, the disciplinary record, and Thompson's findings; found no procedural errors that would have impeded the hearing or appeal process; and concluded that the conduct report and the evidence in the record supported both the charge and the sanctions imposed.

Finally, Manley argues that his habitual-violator conviction violates equal protection. He points to the Department's executive directive—issued while his habeas petition was pending—that bars disciplinary convictions for a different C-356 offense (refusing to participate in a state sex-offender program) from supporting a habitual-violator charge. In Manley's view, "equal protection" requires that this directive apply to all C-356 violations, including refusals to accept a housing assignment. But prison administrators may treat inmates differently so long as their basis for doing so is "rationally related to a legitimate penological interest." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016). And it is reasonable for the Department to treat inmates who refuse to partake in a therapeutic program differently from those who refuse to comply with direct orders regarding prison housing assignments.

AFFIRMED