**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 6, 2021[*]
Decided May 28, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1916

| | |
|---|---|
| ANTOINE C. NELSON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 18-cv-238-wmc |
| CHRISTOPHER STEVENS, et al., *Defendants-Appellees*. | William M. Conley, *Judge*. |

**O R D E R**

Officials at Wisconsin's Green Bay Correctional Institution suspected that Antoine Nelson, a prisoner, was smuggling cocaine into the facility. Following an investigation and a disciplinary hearing, Nelson was found guilty of possession and use of intoxicants, WIS. ADMIN. CODE DOC §§ 303.43, 303.60, and he was punished with 240 days in disciplinary separation (formerly known as segregation). Nelson sued under 42 U.S.C. § 1983 claiming, as relevant to this appeal, that two prison officials violated his Fourteenth Amendment right to due process. He alleged that Christopher

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Stevens, the investigating officer, deleted a potentially exculpatory surveillance video, and that James Elsinger, the hearing officer, was biased. On cross-motions for summary judgment, the district judge resolved both claims in favor of the defendants. Because the surveillance video was immaterial to Nelson's guilt and Nelson did not submit any admissible evidence of bias, we affirm.

We recount the evidence in the light most favorable to Nelson. *See Markel Ins. Co. v. Rau*, 954 F.3d 1012, 1016 (7th Cir. 2020).) The investigation that led to his discipline began in 2017, after an inmate tested positive for cocaine use. Captain Stevens launched an inquiry and discovered that Jason Rinn, another inmate, had sent $3,000 to Brenda Maruri, who then had a "contact visit" with Nelson. Maruri, Rinn, and Nelson told conflicting stories about these events. Nelson said the exchange of money covered a gambling debt; Rinn and Maruri said the money was for a car for Rinn. When Stevens pressed Nelson further, he refused to answer questions, prompting Stevens to order Rinn and Nelson to submit urine samples for testing. Both men tested positive for cocaine use. Nelson denied using cocaine and demanded a retest. He insisted that Stevens tainted his urine sample to frame him because he refused to answer more questions. Nelson's demand for a retest was denied.

Stevens also reviewed surveillance video of events occurring after Felicia Davis, another visitor, had a contact visit with Nelson. As Stevens recounted the video footage, after the contact visit, Nelson passed a package to inmate Henry Davis, who then passed it to inmate Michael Henderson. The three inmates denied receiving or passing along any package. Nelson asserted that he was working his prison job at the relevant time, and Davis swore that he was in his cell. In any case, after reviewing the video, Stevens ordered a search of Henderson's cell, and staff discovered cocaine there. Stevens did not preserve the surveillance video, ostensibly because he was unable to save it at the desired level of focus.

Following his investigation, Stevens issued a conduct report charging Nelson with attempted unauthorized transfer of property, WIS. ADMIN. CODE DOC § 303.40; possession of intoxicants, § 303.43; and use of intoxicants, § 303.60. The conduct report cited Rinn's transfer of $3,000 to Maruri, Maruri's contact visit with Nelson around the time of the money transfer, the inconsistent explanations for the money transfer, the cocaine-positive urinalysis tests for both Nelson and Rinn, and Stevens's account of his observations from the video recording.

Captain Elsinger, the hearing officer, gave Nelson a copy of the conduct report. As required by prison regulations, he also advised Nelson of his "contemplated

disposition"—240 days of disciplinary separation—if Nelson declined a hearing and accepted summary punishment. WIS. ADMIN. CODE DOC § 303.78(2)(a). (The maximum penalty is 360 days. *Id.* § 303.72(2).) Nelson rejected the offer. Before the disciplinary hearing, Nelson asked for the surveillance video, but Stevens denied the request.

Elsinger found Nelson guilty of all charges. He considered Nelson's evidence—his own testimony, testimony from inmate Davis, and a written statement from inmate Henderson—as well as the conduct report. Elsinger reasoned that Stevens's statements in the report were credible because "he ha[d] nothing to gain by falsifying the facts." Elsinger discredited Nelson's testimony because he continued to deny using cocaine even after his positive urinalysis results. As punishment Elsinger imposed 240 days of disciplinary separation. On administrative appeal the warden modified one of Elsinger's findings (on a matter not relevant here) and otherwise affirmed the order of 240 days of disciplinary separation.

Nelson then filed this suit. As relevant here, he alleged that Stevens deprived him of due process by failing to preserve the surveillance video. He also claimed that Elsinger was biased, alleging that he chided him before the hearing for not accepting the offer of 240 days of segregation and said that he would impose 240 days regardless of the evidence at the hearing.

The judge entered summary judgment for the defendants. Based on the length of discipline, the judge acknowledged that Nelson was entitled to "informal due process." *Westefer v. Neal*, 682 F.3d 679, 685 (7th Cir. 2012). The judge criticized Stevens for not preserving and producing the video, but based on the other evidence of Nelson's guilt, he concluded that the video would not have changed the outcome of the disciplinary hearing. The judge also determined that the prehearing statements attributed to Elsinger did not show bias or predetermined guilt.

On appeal Nelson argues that the surveillance video would have shown that he was not guilty of possessing or using cocaine. The denial of potentially exculpatory evidence at a prison disciplinary hearing is subject to harmless-error review; the prisoner must demonstrate that he was prejudiced by the deprivation. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011); *see also Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Under Wisconsin law a finding of guilt requires evidence sufficient to find that "it was more likely than not that the inmate committed the act." WIS. ADMIN. CODE DOC § 303.80(6)(c). This standard differs from the "some evidence" standard, which is the minimum amount of evidence needed to satisfy federal due process and which the district judge used. *See Jones*, 637 F.3d at 845. Using the state's evidentiary standard, we

now ask whether the presence of the video recording would have prevented a finding that it was more likely than not that Nelson possessed and used cocaine. *See id.* at 847.

Nelson contends that the video recording would have shown that he did not pass a package to inmate Davis and was not responsible for the cocaine found in Henderson's cell. He also argues that the video recording would have contradicted Stevens's description of it and therefore undercut Stevens's credibility. But the determination of his guilt did not depend on the video, the cocaine later found in Henderson's cell, or Stevens's credibility. Rather, Nelson's positive cocaine test conclusively proved that he possessed and used an intoxicant. Nelson speculates that his urinalysis was tainted in order to frame him and insists that a retest would have cleared him. Nothing supports his speculation. And retesting is not required even in criminal trials, let alone in prison disciplinary proceedings, absent a legitimate reason to question urinalysis results. *See United States v. Sanapaw*, 366 F.3d 492, 496 (7th Cir. 2004). Because Nelson was not prejudiced by the failure to produce the video, the judge properly entered summary judgment for Stevens.

Nelson also challenges the summary-judgment ruling in favor of Elsinger. He maintains that Elsinger's rebuke before the hearing suggests that he planned to find him guilty regardless of the evidence. We do not need to parse the meaning of the statement Nelson attributes to Elsinger because there's no evidence that he said it. "[A] court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Nelson did not submit a sworn statement under penalty of perjury attesting to what Elsinger said to him. He mentioned the prehearing statement in his complaint, but that's insufficient. At summary judgment a party "must go beyond the pleadings and support its contentions with proper documentary evidence." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (quoting *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

We're left with the mere fact that before the hearing Elsinger formally offered Nelson a 240-day term of discipline if he declined a hearing and then imposed that same term after the hearing. A prison regulation requires a hearing officer to give a prisoner an offer of "contemplated" punishment before a disciplinary hearing. § 303.78(2). Hearing officers "are entitled to a presumption of honesty and integrity." *Piggie*, 342 F.3d at 666. To overcome that presumption, Nelson needed to present clear evidence of bias. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996). Elsinger's decision to impose the same term after the hearing is not clear evidence of bias; it

suggests only that he thought the initial offer was fair. The admissible evidence thus falls far short of satisfying the high evidentiary burden required to prove bias. *Piggie*, 342 F.3d at 666 ("[T]he constitutional standard for impermissible bias is high … .").

AFFIRMED